## REED v. BECK.

1. **Landlord and Tenant:** LIABILITY TO PAY RENT: MINING LEASE CONSTRUED. A lease of land for mining purposes contained the following provisions as to the payment of royalty or rent by the lessee: "The party of the second part covenants and agrees to tender and pay to the party of the first part twelve cents per ton for all the nut and larger than nut coal     *     *     *     mined and taken by the party of the second part therefrom, and to work said mine to an extent necessary to make the rent at $500 per annum, and for the first year the rent to be paid $100 per month the last five months of the year, and the years following, the first five months of the year. And in case the rent or royalty due for coal mined during any period of six months shall amount to less than $250, then the said party of the second part agrees to advance the difference, to apply, however, on future royalty; also agrees     *     *     * on the first day of each month (after the shaft is opened and mining commenced) to pay the party of the first part the amount due from the previous months." *Held* that, though an action might lie against the lessee for failure to open the mine, no royalty or rent became due under the lease until after the shaft was opened and mining commenced. SEEVERS, J., *dissenting*.

*Appeal from Polk Circuit Court.*

### WEDNESDAY, APRIL 22.

PLAINTIFF brought this action to recover the amount of three installments of rent, which he alleges are due him under a certain lease given by him to defendant. He alleges in his petition that on the eighth day of December, 1882, he leased to defendant, for the period of twenty-five years, a certain forty-acre tract of land, for the purpose of mining coal from beneath the surface thereof; that, by the terms of said lease, (which was in writing,) defendant undertook to work the mines on said premises to an extent necessary to make the rent thereof $500 per annum, which sum was to be paid for the first year at the rate of $100 per month for the last five months of the year, and for the succeeding years in like installments for the first five months of each year; and such amounts were to be applied on the royalty of twelve cents

per ton, which defendant was to pay on all coal mined and removed from the premises during the term; but that he had failed and neglected to mine any coal on said premises up to the date of the institution of the suit, which was November 6, 1883; and he demanded judgment for the installments of rent for the months of August, September, and October, 1883. The defendant in his answer admitted the execution of the lease as alleged, but averred that there was no mine opened on the premises when the contract was entered into; nor had one been opened thereon since its execution; nor had any coal been mined on the premises under the contract; and he alleges that, by the terms of the lease, no portion of the rent is due. Plaintiff demurred to this answer, and the demurrer was sustained; and, defendant declining to amend or plead further, judgment was entered against him for the amount claimed; and from this judgment he appeals.

*J. R. Barcroft* and *Gatch & Weaver*, for appellant.

*Good, Wishard & Phillips*, for appellee.

REED, J.—By the terms of the lease, defendant acquired the exclusive right and privilege, for the term of twenty-five years from the date of its execution, "to dig, mine and remove and take away, all the coal in or under the surface" of the premises described therein. He is also granted the right to sink a shaft in the most suitable place on the premises, and to dig and construct the necessary air shafts; also the use of three acres of ground on which to erect the buildings and fixtures necessary for carrying on the mine. He is also granted the use of a strip of land across the premises for a road over which he may remove the coal mined by him. He acquires no other rights or privileges as to the surface of the land. His agreements as to the consideration which he will pay for these rights and privileges are expressed in the following language: "For and in consideration of which the party of the second part covenants and agrees to tender

and pay to the party of the first part twelve cents per ton for all the nut and larger than nut coal * * * * mined and taken by the party of the second part therefrom, and to work said mine to an extent necessary to make the rent at five hundred dollars per annum, and for the first year the rent to be paid one hundred dollars per month, the last five months of the year, and the years following the first five months of each year. And in case the rent or royalty due for coal mined during any period of six months shall amount to less than $250, then the said party of the second part agrees to advance the difference, to apply, however, on future royalty; also agrees * * * on the first day of each month (after the shaft is open and mining commenced) to pay the party of the first part the amount due from the previous month."

Plaintiff's position is that by this agreement defendant is bound to pay the sum of $500, in monthly installments, during the last five months of the first year of the term of the lease, whether he has then opened a shaft on the premises, or mined and removed any coal therefrom, or not; and this is the view taken by the circuit court of the effect of defendant's undertaking. In our opinion this is not the correct interpretation of the contract. In the first clause of the portion of the lease quoted above, the consideration which defendant agrees to pay for the rights and privileges granted by plaintiff is clearly stated to be twelve cents per ton for all coal mined and removed by him from the premises during the term of the lease. The subsequent clauses relate merely to the time and manner in which that undertaking is to be performed. The $500 which he agrees to pay annually is not a sum in addition to the amount of the royalty which he is to pay, but is a part of that amount. His undertaking is that he will work the mine to an extent necessary to make the rent $500 per annum; not that he will pay that sum absolutely as a consideration for the rights and privileges which are granted him. The language of the provision clearly implies that the amount to

be paid is to accrue to plaintiff as royalty on coal actually mined on the premises.

At the time the contract was entered into there was no mine opened on the place. Defendant contracted to open one, and he undertook, further, that after it was opened he would mine such number of tons of coal each year as would amount, at twelve cents per ton, to the sum of $500; and that he would pay this amount in five monthly install-ments. Clearly this is not an undertaking to pay any amount before the mine should be opened. But it is claimed that the provision that "for the first year. the rent is to be paid, one hundred dollars per month," etc., fixes defendant's liabil ity to pay rent for the first year of the term of the lease, whether he mined any coal during that year or not; but we think this provision was not intended to fix the time when the rent should begin to accrue. It simply. prescribes the manner in which the payments shall be made for the first year in which rent becomes due.

If the provisions we have been considering were to be con-strued, then, solely with reference to the language in which they are expressed, they would not, we think, render defend·ant liable to pay the installments sued for before he had opened a mine on the leased premises. But, if we were not satisfied of the correctness of this position, there is a subse-quent provision of the lease which we think definitely settles the question as to when the rent will begin to accrue. It is provided that defendant, on the first day of each month, "after the shaft is opened and mining commenced," will pay plaintiff the amount due from the previous month. This provision fixes the time when the rent or royalty which accrues in any one month is to be paid. That it applies to the installments in which the annual sums of $500 are to be paid, we think there can be no doubt. These installments will accrue in certain months of the year, and by this provi-sion they are each to be paid on the first day of the month following the one in which it accrues. In this provision,

also, the parties have expressed their understanding as to the time when the rents will begin to accrue, which is when " the shaft is opened and mining is commenced." If defendant has violated his contract by failing to open the mine within such time as may be provided for in the lease, plaintiff would doubtless have a remedy for such breach in an action to recover the damages which he has sustained in consequence thereof. But we are very clear that he is not entitled to any portion of the royalty provided for in the lease before a mine is opened on the premises.

The judgment of the circuit will be

REVERSED.

SEEVERS, J., *dissenting*—The foregoing opinion is based on the thought that the defendant did not bind himself to pay unless he mined coal. This, in my judgment, is an incorrect construction of the contract. It is true, he was only to pay twelve cents per ton for the coal mined; but this is not all he undertook to do. He agreed to work the mine to an extent sufficient to " make the rent at five hundred dollars per annum, and for the first year the rent to be paid, one hundred dollars per month the last five months in the year." That is to say, $500 was to be paid during the last five months in the year. This, it seems to me, is an absolute promise to pay. That this is so, and that the parties must have so understood, appears from the fact that the defendant provided a mode by which he could be relieved of such liability. The contract provides that the defendant had three months from its date to prospect for coal, and, if none was found which could be mined at a profit, the defendant had the right to surrender the lease, and thus relieve himself from liability before any part of $500 was payable. The provision in relation to the payment of twelve cents per ton, and in relation to payments on the first day of each month during the whole year, instead of only five months, has reference to the coal actually mined. But the parties evidently contemplated that the defendant

might not prospect and open the mine as he agreed to do, and hence the provision in relation to the payment of the $500 per year. This is the only provision in the lease which enables the plaintiff to reap any advantage therefrom, although his land is incumbered at the option of the defendant for the period of twenty-five years, except that he possibly can maintain an action, if the mine is not opened and worked in a reasonable time. Conceding that he can maintain such an action, the measure of his damage is exceedingly uncertain. In my opinion the judgment of the circuit court is correct.