JOHN P. GRIBBEN ET AL. v. HENRY M. ATKINSON.

*Landlord and tenant—Lease of land for mining purposes—Liability of lessee for royalty and taxes.*

1. Where a lessee leased a parcel of land "for the purpose of exploring for, mining, taking out, and removing therefrom the merchantable shipping iron ore which is, or which hereafter may be, found on, in, or under said land," and the lessors expressly reserved to themselves the use and possession of the land for every other purpose, and restricted the right of the lessee to cut timber thereon to such as might be wanted for mining purposes,—

   *Held*, that if, upon diligent search and exploration, no iron ore was found, and none exists in or under the soil, the lessee cannot be held liable for the royalty agreed to be paid on the ore agreed to be mined and removed from the leased premises during the term of the lease.[1]

2. Where in such a case the lessee agreed to pay all taxes assessed on the land, iron ore, or improvements thereon, and retained possession from August, 1881, to June, 1882, when he abandoned the premises for the reasons stated in head-note 1,—

   *Held*, that he was liable to pay the taxes for 1881 on the land and improvements.

Error to Marquette. (Grant, J.) Argued January 18, 1887. Decided February 3, 1887.

Debt for royalty on mining lease. Defendant brings error. Affirmed. The facts are stated in the opinion.

*W. P. Healy,* for appellant:

Cited in support of doctrine laid down in head-note 1, *Brick Co. v. Pond,* 38 Ohio St. 65; *Cook v. Andrews,* 36 Id. 174; *Reed v. Beck,* 66 Iowa, 21 (23 N. W. Rep. 159).

All iron mining leases and licenses allow actual explorations as well as mining, for the purpose of developing new mines, and the words must be construed together: *Harlow v. Lake Superior Iron Co.,* 36 Mich. 105.

---

[1] See *Shear v. Wright,* 60 Mich. 159 (head-note 2), as to necessity for existence of means of performance, etc.

The entire scheme of a mining license is that ore exists in minable quantities on the land, and, if not, the whole scheme fails; and mere abandonment by the lessee terminates the license, and no written notice of surrender is necessary: *East Jersey Iron Co. v. Wright*, 32 N. J. Eq. 248.

All the authorities recognize such instruments as the one sued on as licenses: *East Jersey Iron Co. v. Wright, supra; Funk v. Haldeman*, 53 Penn. St. 229; *Harlow v. Lake Superior Iron Co.*, 36 Mich. 105.

*Hayden & Young,* for plaintiffs:

At common law, one who absolutely binds himself by a lease of lands to the performance of certain covenants must perform or pay the penalty of violation, even though it becomes impossible for him to do so: *Marquis v. Thompson*, 13 M. & W. 487; *Kramer v. Cook*, 7 Gray, 550; *Eddy v. Clement*, 38 Vt. 486; Tayl. Land. & T. § 372, and cases cited.

Counsel distinguish the case at bar from those cited in support of the right of a lessee to abandon land on failure to find ore, etc., claiming that defendant leased the land, with the right to cut timber for fuel and other purposes, and to remove the buildings erected, etc., and that the retention of possession by the lessee, after he had ceased explorations for ore, made him liable to pay the royalty.

MORSE, J.   On the first day of August, A. D. 1881, the plaintiffs executed to the defendant a mining lease of the south-east quarter of section 28, township 47 north, range 26 west, in the county of Marquette.

The lease provided that the premises were leased—

"For the purpose of exploring for, mining, taking out, and removing therefrom the merchantable shipping iron ore which is, or which hereafter may be, found on, in, or under said land:  *Provided,* That said party of the second part shall have the right at any time to terminate this lease, by giving said first party three months' notice in writing personally or by mail, and thereupon this lease shall terminate, and all arrearages and sums which may be due hereunder up to its termination shall be paid in full by said second party to said first party."

The second party was authorized to erect buildings and machinery on the premises, which became real estate; but at

the termination of the lease, if arrearages were paid, such buildings and machinery could be removed by second party within 60 days. He had the right, also, to cut timber for fuel for mining purposes, and all other purposes connected therewith. He was to pay a royalty of 50 cents per ton of 2,240 pounds on all iron ore removed from said premises during the lease.

"*Fifth*. Payments of such royalty shall be made quarter yearly, on or before the fifteenth day of November, February, May, and August, for the iron ore removed from said premises during the three calendar months immediately preceding, to such person or party as the parties of the first part, their heirs, executors, administrators, or assigns, may designate."

"*Eighth*. The said party of the second part shall, on or before January 1 following the levy thereof, pay all taxes and assessments, ordinary or extraordinary, general or specific, which may be assessed on said lands, iron ore, or improvements on said lands, and furnish, at time of payment, duplicate receipts thereof to said first parties."

"*Ninth*. Said second party shall mine and remove at least five thousand (5,000) gross tons within one year from the first day of August, A. D. 1881, and shall mine and remove at least eight thousand (8,000) gross tons the second year,— that is, between the first day of August, A. D. 1882, and the first day of August, A. D. 1883,—and ten thousand (10,000) gross tons each and every year thereafter during the continuance of this lease, or, in case such quantities are not mined and removed, the said party of the second part, his executors or assigns, shall nevertheless pay royalty upon said minimum amount, to be paid *pro rata* quarter yearly, as aforesaid; but ore paid for in any one year, and not mined, may be credited on any excess of said minimum amount mined and paid for in the year next succeeding, but not thereafter. Said second party further agrees to diligently and continuously prosecute mining operations on said lands during the existence of this lease, and to mine and remove as great a quantity of iron ore in each and every year in excess of said minimum amount as can be profitably mined and removed."

"*Twelfth*. The right of possession of said lands not occupied by said second party for mining purposes shall always remain in said first parties, their heirs or assigns, who shall have the same right to use and occupy said lands as if these

presents were not executed, whenever the same does not evidently or manifestly interfere with the mining operations of said second party."

The term of the lease was for 20 years from and after its date.

We have set forth above those portions of the lease necessary in the determination of this controversy.

The plaintiffs in this action sued the defendant upon a special count in assumpsit for the rent or royalty from the date of the lease to December 18, 1882, and under the common counts for the taxes upon the premises which the defendant failed to pay, and which plaintiffs were obliged to pay to save said premises from sale.

Upon the trial in the court below, the plaintiffs introduced evidence tending to show that the defendant accepted the lease, and entered into possession of the lands at its date, and began at once to search and explore for iron ore, and continued in possession until about the first day of June, 1882. The defendant then ceased exploring, claiming that he had made diligent search for iron ore, but was unable to find any, and he refused to pay any rent, royalty, or taxes whatsoever; but he did not surrender the lease, neither was the same forfeited by the plaintiffs, until the eleventh day of December, 1882. Plaintiffs also showed the amount of the taxes for the year 1881 upon the premises, which defendant refused to pay, and which they paid, to be $160. They further testified that the amount due them for royalty, under the ninth clause of said lease, was $2,000.

The defendant, to maintain the issue on his part, introduced evidence tending to show that, after receiving said lease from plaintiffs, he immediately entered on said lands, and commenced exploring for iron ore, and in the course of one year expended the sum of $14,000 cash in such explorations, but was unable to find any merchantable iron ore, or any iron ore having any value, on said lands; and that, so

far as he could discover, no mine or mines of iron ore existed on said lands, and that he had removed no iron ore whatever from said lands, for the reason that he could not discover any iron ore on said lands.

The defendant also introduced the testimony of skilled miners who had examined said land since the commencement of this action, and they testified that in their opinion the said defendant had expended as much money on said lands in exploring for iron ore as was necessary, and that in their opinion no mine of iron ore exists on said lands.

The circuit judge instructed the jury that the lease was intended by the parties to be a lease of this land for the purpose of mining merchantable iron ore, and that it was in the contemplation of the parties that there was such merchantable iron ore in paying quantities upon the property in question.

"The defense, in order to avoid the payment of fifty cents per ton upon eight thousand tons provided for in the second year, must prove to you that there was not merchantable iron ore upon that property in sufficient quantities to make it pay; in other words, he must prove to you that there was not a mine of that description upon the property in question."

"I think I have said—if I have not, I will say now—that the defendant in this case was bound, under the terms of this lease, to go on and work upon that property, and conduct the explorations,—to use endeavors to find what is there, —in the usual, customary mining manner. He was bound to do all that good mining would require in order to obtain the results contemplated by the lease. If he has done so, and no good ore was found by virtue of such exertions, then the plaintiffs in this case could not recover; that is, on that branch of the case."

He also instructed them that the defendant was liable for the taxes.

The jury found for the defendant on the royalty, but gave a verdict for the plaintiffs for the taxes, assessing their damages at $168.41.

Two bills of exceptions were settled in the cause, and both parties come to this Court on writs of error. The plaintiffs claim they are entitled to the royalty as a matter of law, and the defendant contends that the court erred as to the taxes.

We think the court was right in both instances.

We consider the lease clearly one by its terms for mining iron ore. The plaintiffs, by the twelfth section of the lease, expressly reserved to themselves the use and possession of the land for every other purpose; and the right to cut timber on the land was also expressly restricted to such timber as might be wanted for mining purposes. Being such a lease, if, upon diligent search and exploration, no iron ore was found, and none exists in or under the soil, the defendant cannot be held liable for the royalty upon such ore. *Cook v. Andrews,* 36 Ohio St. 174; *Brick Co. v. Pond,* 38 Id. 65; *Reed v. Beck,* 66 Iowa, 21 (23 N. W. Rep. 159).

But the tax clause of the lease stands upon a different basis. The taxes he agreed to pay were not those that might be assessed or levied upon the iron ore alone, but upon the whole property,—the land and improvements thereon as well as the ore. Having retained possession of the lands while exploring, and until December, 1882, we think the defendant was liable for the taxes of 1881.

It is also equitable that he should pay them. While he was in possession, no other person could test the lands for iron ore, and he was authorized to cut and probably used timber belonging to plaintiffs for fuel, and in the erection of machinery upon the premises. He cannot complain that he should pay the taxes upon his own improvements upon the premises, which were made by the contract part of the real estate, but which he could remove, or upon the lands which he had the privilege of testing for ore, without any other payment for rent or royalty if he failed to find ore.

The judgment is affirmed, with costs.

The other Justices concurred.