BLAKE v. LOBB'S ESTATE.

MINING LEASE—FAILURE OF ORE—LIABILITY OF LESSEE FOR RENT.
A lease of land "for the purpose of exploring for, mining, taking out, and removing therefrom the merchantable iron ore which is or which hereafter may be found on, in, or under said land," at a specified annual rent, to be considered in the adjustment of royalties on ore removed, presupposes the existence of merchantable ore, and if, after reasonable efforts on the part of the lessee, ore is not found in minable quantities, the lease fails, and no rent can be collected. *Gribben* v. *Atkinson*, 64 Mich. 651, followed.

Error to Marquette; Stone, J. Submitted April 29, 1896. Decided October 6, 1896.

Richard Blake presented a claim in probate court against the estate of Edward Lobb, deceased, for rent. The claim was disallowed, and claimant appealed to the circuit court. From a judgment for defendant, claimant brings error. Affirmed.

*Ball & Ball*, for appellant.
*Hayden & Young*, for appellee.

MONTGOMERY, J. On the 1st of January, 1892, claimant was the owner of an interest in certain mining lands in the county of Marquette, and joined with his co-owners in making a lease to the deceased and others, by which the owners—

"In consideration of the sum of one dollar to them paid by the parties of the second part, the receipt whereof is hereby acknowledged, and in further consideration of the covenants and conditions herein contained, to be kept and performed by the parties of the second part, do hereby let, lease, and demise to the parties of the second part, for the term of 20 years, the said tracts of land, containing 160 acres, which premises are leased to the said parties of the second part for the purpose of exploring for, mining, taking out, and removing therefrom the merchantable iron ore which is or which hereafter may be found on, in, or under said land, together with the right to construct all buildings, make all excavations, openings, drains, ditches, railroads, wagon roads, and other improvements upon said premises which are or may become suitable or necessary for the mining and removing of iron ore from said premises."

There was also a provision that—

"The parties of the second part shall have the right at any time to terminate this agreement, in so far as it requires the parties of the second part to mine ore on said land, or to pay a royalty therefor, by giving 60 days' written notice to the parties of the first part, either in person or by mail, and thereupon the foregoing lease and demise shall terminate, and all arrearages and sums which may be due under the same up to and including the date of its determination, as set forth in such notice, shall be paid upon settlement and adjustment thereof."

The undertaking of the deceased was as follows:

"The parties of the second part, in consideration of the said demise, hereby covenant and agree to and with the parties of the first part, to pay to the parties of the first part or their assigns, in manner hereinafter designated, as rent for the lands hereby demised, the sum of $6,000 per annum, payable, for the first year, on the 1st

110 MICH.—39.

day of January, 1893, and thereafter quarter-yearly on the days hereinafter specified for the payment of royalty, and also such additional sums as may accrue for royalty on ores removed, as hereinafter set forth (said royalty being treated as rent), to the several parties of the first part, or their assigns: *Provided*, that all the royalties paid on iron ore mined and removed from said premises during any year ending December 31st shall apply, so far as necessary, or so far as the same will go, to the satisfaction and payment of said rent for such year, and if, in any year, the royalty on iron ore so mined and removed by said second parties shall not amount to $6,000, the rent so paid by said second parties in excess of the amount of such royalty shall be applied towards the payment of any excess over $6,000 that may be payable on account of royalties in any subsequent year."

The parties of the second part also undertook to "take out and remove as much iron ore as can be mined and removed profitably to said parties, paying therefor at the quarter dates aforesaid, and at the rates aforesaid, for each and every ton of ore so mined and removed."

The lease in question was terminated by notice given August 2, 1893, and this action was brought to recover rent under the lease, accruing prior to said notice. The defendant offered testimony tending to show that no iron ore in minable quantities existed in the premises, and the circuit judge charged the jury that, if it was found that there was no iron ore there—no merchantable iron ore—on the property in sufficient quantities to make it pay, and that the deceased used all reasonable efforts to ascertain that, and made the proper excavations to discover any iron ore, the plaintiff could not recover. The circuit judge relied on the case of *Gribben* v. *Atkinson*, 64 Mich. 651. It is contended by the plaintiff that that case is distinguishable from this, in that in that case the payments to be made were designated as "royalty," while in the present case they are spoken of as "rent." The circuit judge was of the opinion that this does not distinguish the cases, in determining the intent of the parties, and we think in this there was no error. In that case, as in this,

the lease was made for the purpose of exploring for, mining, and taking out merchantable iron ore, and it was held that the lease, by its terms, presupposed the existence of ore, and that, upon its appearing that no such ore was to be found, the purpose of the lease failed, and the defendant should not be charged with the consideration. In that case, as in this, there was a specific engagement to pay a specified sum at all events, and while, in that case, it was called "royalty" and in this case termed "rent," the agreement was, in both cases, based upon the supposition that ore existed. We think this idea was no more clearly expressed in that lease than in this. The scheme of a mining lease implies that ore exists in minable quantities, and, if it does not, the scheme fails. *East Jersey Iron Co.* v. *Wright*, 32 N. J. Eq. 248. See, also, *Muhlenberg* v. *Henning*, 116 Pa. St. 138.

The judgment will be affirmed, with costs.

GRANT, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.