HEWITT IRON MINING CO. *v.* DESSAU CO. [1]

1. MINING LEASE—EXHAUSTION OF ORE—LIABILITY FOR MINIMUM ROYALTY.

Where a mining lease required the lessee to mine such quantity of ore each year as should, at a fixed royalty, yield a stipulated sum, and, in case it should not remove such quantity, to pay such sum nevertheless, and the lessee worked the property for the full term of the lease, paying the prescribed royalty for all but the last six months, when the ore had become so far exhausted that it was unable to mine the minimum quantity, the lessor was only entitled to royalty for that period on the ore actually mined.

2. SAME—EVIDENCE.

The fact that, after the expiration of a mining lease, the lessee continued to work the property under rights previously acquired from third parties, producing small quantities of ore, does not conclusively negative its claim that there was no ore remaining on the property that could have been mined at a profit during the term of the lease.

3. SAME—ENFORCEMENT OF LIEN—EQUITY JURISDICTION.

Where a bill to enforce a lien for royalties under a mining lease alleges the existence of property subject to a lien within the court's jurisdiction belonging to defendant, and the answer is silent as to the removal or sale of the property, and suggests no nonjoinder of parties, and not until the presentation of the defense is there any intimation that the property has been shipped away, and it is not shown to have been sold to a *bona fide* purchaser, the court has jurisdiction to adjudicate the question of lien, and render a personal decree for the amount found due.

Appeal from Dickinson; Stone, J.   Submitted January 31, 1902.   Decided March 4, 1902.

Bill by the Hewitt Iron Mining Company against the Dessau Company, impleaded with Sidney Cohen, to enforce a lien for royalties under a mining lease.   From a

[1] Rehearing denied April 22, 1902.

decree for complainant, defendant appeals. Modified and affirmed.

*Cook & Pelham*, for complainant.

*George Hayden* and *James C. Wood* (*Dan H. Ball* and *E. A. Woodward*, of counsel), for defendant.

HOOKER, C. J. The Hewitt Iron Mining Company, being lessee of the property involved in this litigation, sublet the same to the Millie Iron Mining Company, which in turn assigned its sublease to the defendant. The term for which the property was sublet ended June 29, 1899. In October, 1896, an agreement was made between the Hewitt Iron Mining Company and the defendant modifying the sublease under which the defendant then occupied the premises. The lease under which the Hewitt Company sublet, the sublease, and the agreement modifying the latter, all terminated on June 29, 1899. Previous thereto, and on October 26, 1896, the owners of the fee executed a lease to the defendant, covering the same premises, for the period of 20 years from and after June 29, 1899.

The lease and modification thereof under which the Dessau Company occupied the property provide that a royalty of 35 cents per ton of 2,240 pounds should be paid on all Bessemer iron ore containing 57 per cent. and over of metallic iron, and, on all non-Bessemer ore containing 57 per cent. and over of metallic iron, 25 cents per ton of 2,240 pounds; that there should be mined in each year such quantity of these ores as will, at the royalty thereon, yield $3,500 per annum; that, in case it shall not remove such quantities, it shall nevertheless pay $3,500 per annum; that all royalties for ore not mined shall be payable at end of year, except for the portion of 1899 between January 1st and June 29th of said year, which shall be payable at the expiration of sublease; that second party shall not remove or impair any supports placed in the mines, nor any timber or framework necessary to the use and maintenance of shafts or other approaches to the mine, nor any tram-

ways within the mine; that second party shall open, use, and work said mines in such manner only as is usual and customary in the skillful and proper mining operations of similar character when conducted by the proprietors themselves, and so as not to do, cause, or permit any unnecessary or unusual permanent injury to same, or inconvenience or hindrance in the subsequent operations of the same mine, and in the working of said mine; that the royalties reserved shall be treated as rent; that second party shall have the right to remove through the shafts on the premises leased any ore mined from adjoining premises, called the "Chapin Mine," without charge by first party, so far as it becomes necessary in the mining of ore from premises in sublease; that first party reserves, and shall at all times have, possess, and hold, a lien upon all ores mined and on all improvements made on said premises by second party, as a security for any unpaid balance of money due under this contract,—such balance being deemed and to be treated as balance of purchase money,—and which lien may be enforced against such property in like manner as liens conferred by chattel mortgages are or may be entitled to be enforced under the laws of the State of Michigan.

The royalties provided by these writings appear to have been regularly paid, with the exception of the amount provided to cover the six months ending June 29, 1899, although it is claimed that the defendant had not succeeded in taking out sufficient ore at any time to amount, at the rate fixed, to the prescribed payments. Not having paid anything for the last six months of the term, the bill in this cause was filed to enforce a lien upon the ore on hand and improvements for such royalty, and for taxes which defendant had failed to pay. The defenses relied upon are:

1. That ore assaying 57 per cent. was exhausted, and therefore the defendant was not liable for a royalty.

2. That the only ground of equity jurisdiction was the enforcement of a lien, and that, as both the property and

the owner of the same were not in this State, the court acquired no jurisdiction to render a personal decree against the defendant for its indebtedness.

The learned circuit judge held that the tools, machinery, etc., placed upon the premises by the sublessee did not constitute improvements, within the true meaning of that word as used in the instrument, and therefore that there was no lien upon anything but the ore mined upon the premises, and that, at the time the suit was commenced, all such ore had been sold and shipped out of the State. He was of the opinion that the defendant failed to prove that the ore was exhausted, and found it indebted for the minimum royalty prescribed for the six months ending with the term, and held that the court had jurisdiction to enforce a lien of this description by a suit similar to one appropriate to foreclose a chattel mortgage; that suits of that nature are transitory, and not local, and jurisdiction exists wherever service can be had on the defendant, irrespective of the locality of the property; that, where the property is not within the jurisdiction, the rights of the purchaser will not be affected, but that the court may, as between the mortgagor and mortgagee, where both are within its jurisdiction, adjudicate and determine the lien, and the amount of it; and that the removing and selling of the property does not destroy the lien. A personal decree was rendered against the defendant in favor of the complainant for the amount claimed, and the defendant has appealed.

We have endeavored to critically weigh the testimony on the first question, and have, with some hesitation, reached a different conclusion from that of the circuit judge. During the last six months of the term but a small amount of ore was taken out. Prospecting has continued since, with unsatisfactory results; no ore in paying quantities having been found. The diamond drill has been freely used, to little purpose. Stress is laid upon the fact that the defendant has been willing to continue its exploration; but this does not necessarily indicate more than a

well-founded hope that the efforts may be successful. It should not be forgotten that defendant has operated under a new lease made two or three years before the lease in controversy ended, and when it was regularly paying its royalties, and presumably doing a fair business, justifying its action in taking a new lease. There is nothing to lead to the inference of bad faith. For two years and a half since its sublease expired it has pursued its exploration with apparent diligence, but has failed to strike ore in paying quantities; and, to our minds, it seems improbable that it could have found ore that it could have mined profitably during the last six months of its term, if there is any ore in paying quantities upon the premises. *Blake* v. *Lobb's Estate*, 110 Mich. 608 (68 N. W. 437). It may be said that it should have robbed the mine, by removing the pillars which support its roof; but we think it would not have been justified in doing that, under the spirit of its lease, which prohibits the removal or impairment of supports placed in the mines. The defendant admits that it took some ore from the mine during the period in question, royalties upon which amounted to $381.22. During the succeeding six months the royalties amounted to $623.62, and during 1900 they amounted to $138.60. These successes are not inconsistent with defendant's claim. They may be alluring and explain defendant's persistent hope, but they do not show that the ore has existed in paying quantities; and, if it did not, the fact that, in a fruitless search for paying ore bodies, the defendant found some ore, does not prove it.

The complainant is entitled to its decree for the royalty earned,— *i. e.*, $381.22,—unless defendant's second point is a valid objection to any relief. In substance, it is that equity has no jurisdiction to entertain a suit upon a personal obligation merely; that its only jurisdiction in this case is to enforce a lien, and, inasmuch as it appears that the property has been sold, the lien is discharged, and there is consequently no jurisdiction to enforce it. Again, it is said the proceeding is one *in rem*, aimed at the prop-

erty, and, where the mortgagor has parted with the equity of redemption, he is not a necessary party, and inasmuch as the owner of the equity is not before the court, and the property is beyond the jurisdiction, the court cannot make a decree affecting them, and cannot be used as a substitute for a court of law to enforce a personal remedy against this defendant.

When this bill was filed, it alleged the existence of property upon which complainant had a lien, within the jurisdiction, belonging to this defendant. The answer is silent upon the subject of the removal or sale of the property, and suggests no nonjoinder of parties interested. On the contrary, it admits an indebtedness of $381.22, and offers to pay the same if the court shall find it due. It was not until the presentation of the defense upon the hearing that there was an intimation that the ore had been shipped away, and it is not shown to have been sold to a *bona fide* purchaser. The superintendent testified that it was shipped before August 1st, but did not know whether it had then been sold or not. The secretary testified that the ore was sold in January or February previous for the entire season. Under these circumstances, we think the court had jurisdiction to adjudicate the question of the lien between these parties, and to render a personal decree for the amount found due; and though it is manifest that such decree could not bind a prior purchaser of the property, if there be such, it might be conclusive between these parties should any proceedings be taken in another jurisdiction to pursue this property as the property of this defendant.

The decree of the circuit court will be modified by reducing it in amount to the sum of $381.22, with interest from June 29, 1899, and in other respects it will be affirmed. The defendant will recover costs of this court.

Moore, Grant, and Montgomery, JJ., concurred. Long, J., did not sit.