# Brooks *et al. v.* Cook *et al.*

*Action to recover Royalty upon a Lease of Ore Lands.*

1. *Action to recover royalty from lessee; defendants not liable for royalty where leased property does not contain ore; pleading and evidence.*—Where the owners of land executed a lease granting to the lessees the right and privilege to mine all the iron ore in and under said designated land for a given period, for which right the plaintiffs were to be compensated by a royalty, and a minimum amount of ore to be mined is stipu-

lated, if, in said contract of lease the payment of royalty be based upon the assumption by the parties that iron ore existed under the land, and it is subsequently ascertained that no iron ore existed in the lands, the lessees can not be held liable for the royalty stipulated; and in an action by the lessors to recover the minimum royalty provided for, it is competent for the defendants to set up as a defense the non-existence of the ore and to introduce evidence to show that fact.

APPEAL from the City Court of Talladega.

Tried before the Hon. G. K. MILLER.

This was an action brought by the appellees against the appellants to recover $75, the amount of 5 months royalty alleged to be due upon a lease executed by the plaintiffs to the defendants, by which lease the plaintiffs granted to the defendants the right and privilege to mine all iron ore in and under certain designated lands. The defendants pleaded the general issue, and also interposed, by special pleas, the defense that said contract of lease was based upon the supposition indulged in by the parties thereto that the lands described in said lease contained iron ore in merchantable quantities; but that as a matter of fact, after diligent and faithful digging and search, it was ascertained that said lands did not contain iron ore in merchantable quantities, and was entirely valueless so far as iron ore being contained therein was concerned, and that, therefore, the defendants did not mine said ore, and hence were not due the defendants the royalty stipulated in the contract of lease.

The plaintiffs demurred to the special pleas setting up this defense, upon the ground that said pleas presented no defense to the action sued on. These demurrers were sustained, and to this ruling the defendants duly excepted. The plaintiffs offered in evidence the lease under which they claimed the amount sued for, which lease was in words and figures as follows:

"State of Alabama, Talladega County—Whereas Thos. L. Cook, Mary E. Cook, wife of R. E. Cook, and Mrs. Maria L. Gorman are the owners of a certain tract of land lying and being in Talladega County, Alabama, and more particularly described as follows, to-wit: The

south half of southeast quarter of section 9, township 19, range 4, supposed to contain iron ore:

"And whereas, Richard E. Cook is duly authorized and empowered by them to lease the mineral rights in said land under certain conditions and stipulations; and whereas, J. B. Brooks, J. B. Stagg and W. C. Stagg, a firm acting and doing business under the firm name of Brooks, Stagg & Co., do enter into the following agreement, to-wit, the said mineral rights and privileges only are to be let to parties of second part:

"1st. R. E. Cook, party of the first part, agrees and binds himself to lease to the said party of the second part as follows, to-wit: The mineral rights and privileges on said land from this date for a term of ten (10) years in consideration of one dollar to him in hand paid, the receipt whereof is acknowledged, and the further consideration of a faithful compliance by the party of the second part, with the terms and condition hereinafter mentioned, the parties of the second part agree to mine and pay for at a royalty of 15 cents per standard ton of not less than one hundred tons per month during the continuance of this contract, on the 20th day of each month for all ore mined the previous month (except for the first month). A failure to comply with the foregoing agreement to pay at the rate of 100 tons per month will render this lease void and of no effect, so far as the party of the second part are concerned.

"And party of the first part for his principals, reserves the rights to take possession of the mine and ore mined, either on the bank, the railroad, or the furnace, and sell the same either by private sale or otherwise, and out of the proceeds pay all sums due his principal; and should anything remain over after paying all legitimate cost and expenses of such sale, and amounts due for royalty to his principals, pay over to the party of the second part the remainder, and may take possession of the mines, with all tools and fixtures. It is agreed and understood that no unnecessary damage is to be done to the agricultural interest on said lands, and that the parties farming said land will not be unnecessarily interfered with by the parties of the second part. It is

agreed that the railroad weights shall govern in the settlement of the royalty at all times when practical, and that the party of the first part shall have at all times free access to the mines to see after the business for his principals and shall be furnished by the party of the second part, weekly statements of number of cars shipped, with the initials of number of cars and to what furnace consigned. The party of the first part agrees to furnish rights-of-way to and from the mines to the railroad on a route to be agreed upon by the parties to this contract for all ore which the said Cook has or may acquire an interest in, and the party of the second part agree that they will not ship or attempt to ship over said right-of-way any other ore save that in which the said Cook may agree now or hereafter agree to. We also agree to execute to Cook & Sawyer a note for eighty ($80) dollars for the rent of what is known as the undivided forty, they reserving water privileges, and the right to and from the spring, said note payable the 1st day of December, 1900, and is referred to as a part of this contract; and should the party to this contract agree to extend the time of renting, then in that event the party of the second part are to execute their notes annually on each 1st of December to cover the rent of the next year's ore, any failure to comply with this contract will render the note due and payable at the time of the forfeiture of this contract, to all of which we agree and bind ourselves, this the 18th day of January, 1900." This lease was signed by "R. E. Cook, Agent," and the defendants individually.

During the trial of the case the defendants offered evidence to prove that there was no iron ore in merchantable quantities in the lands leased. The plaintiffs objected to the introduction of this evidence, which objection the court sustained, and to each of these rulings the defendants duly excepted. The other facts of the case, necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the court, at the request of the plaintiffs, gave to the jury the following written charge: "The court charges the jury

that if they believe the evidence, they must find for the plaintiffs for the amount sued for, to-wit, seventy-five dollars, with interest from 26th day of July, 1900."

The defendants duly excepted to the giving of this charge.

There were verdict and judgment for the plaintiffs, fixing their recovery at $86.50. The defendants appeal, and assign as error the several rulings of the trial court, to which exceptions were reserved.

. DRYER & WEBB, for appellants.—A plea stating how and in what respect the consideration, which constituted the basis of the contract sued on, failed, is sufficient. *Sims v. Herzfield,* 95 Ala. 145; *Dowdy v. Berney,* 97 Ala. 643; *McFee v. Glenary Co.,* 97 Ala. 709.

A mere erroneous supposition acted upon as a consideration of a contract, is no consideration; and a contract based on such a supposition as a consideration is void. *Maull v. Vaughan,* 45 Ala. 134; Anson on Contracts, p. 88. Mistake as to the existence of the subject matter of a contract avoids the contract.—Anson on Contracts, pp. 158, 160, 167, 175, 177, 424; 21 Am. & Eng. Enc of Law (1st ed.), 469; Benjamin on Sales, p. 528; *Robinson v. Hirschfelder,* 59 Ala. 503; *Maull v. Vaughan,* 45 Ala. 134; 14 Enc. Pl. & Pr., p. 37; *Bullock v. Ogden,* 13 Ala. 346; *Hurd v. Hall,* 12 Wisconsin, 112; 20 Am. & Eng. Enc. of Law, (2d ed.), p. 872.

An impossibility cannot be performed. If a person contracts to do what is at the time impossible, the contract will not bind him, because no man is compelled to perform an impossibility. Where a sale is made, and there turns out to be no subject matter, there is no sale.—Anson on Contracts, pp. 167, 425; *Paradine v. Jane,* Aleyn 26; *Jones v. U. S.,* 96 U. S. 645; *Wilson v. Isbell,* 45 Ala. 148; *Robinson v. Hirschfelder,* 59 Ala. 503; *Maull v. Vaughan,* 45 Ala. 134; *Clifford v. Watts,* L. R. 5 C. P. 577.

Mutual assent of the parties is indespensable to the validity of a contract. If the consideration of the contract is a mere supposition and does not in fact exist, the mutual assent of the parties can never be reached. Benjamin on Sales, pp. 2, 94; Anson on Contracts, p. 7;

21 Am. & Eng. Enc of Law (1st ed.), p. 447; *James v. Stiggins*, 13 Ala. 835; *Lewis v. Lane*, 1 Ala. 341. In the interpretation of contracts the intention of the parties should govern, to be gathered from the entire contract. *Pierce v. Tidwell*, 81 Ala. 299; *Jones v. Anderson*, 82 Ala. 302.

KNOX, BOWIE & BURR, *contra.*—Where the terms of an agreement are placed in writing and are not ambiguous, the construction of the paper becomes a question of law for the court and not for the jury to determine.—*Foley v. Felrath*, 98 Ala. 177-181; *Drennen & Co. v. Smith*, 115 Ala. 396; *Barnhill v. Howard*, 104 Ala. 412.

A written contract merges all prior or contemporaneous conditions or agreements, and parol testimony is not admissible to show that a written contract, absolute on its face and duly signed and delivered, was not to be binding, except on the happening of some future contingency.—*Town of Brewton v. Glass*, 116 Ala. 633; *Pierce v. Tidwell*, 81 Ala. 299; *Clark v. Hart*, 49 Ala. 86; *Wurtzburger v. Anniston Rolling Mills*, 94 Ala. 640; *Hart v. Clark*, 54 Ala. 490.

The consideration for the lease construed by the court in this case is plainly shown by the lease itself to have been the grant of mineral rights in the lands described in the lease. Such leases are not at all uncommon. They carry no implied covenant or warranty that the lands leased contain minerals.—20 Amer. & Eng. Enc. of Law, (2d ed.), p. 784; *Clifton v. Montague*, 52 Amer. State Reports, 878; *Lehigh Zinc & Iron Co. v. Bamford*, 150 U. S. Reports, 666; *Pierce v. Tidwell*, 81 Ala. 299. This is in line with the universal and familiar principle that the law will not imply any covenant or warranty on the part of the landlord with regard to the physical condition of the premises, or that they are suitable for the purposes for which they are leased; the rule of *caveat emptor* applying with full force to leases.—18 Amer. & Eng. Enc. of Law, (2d ed.), 613; *Lehigh Zinc & Iron Co. v. Bamford*, 150 U. S. Reports, 666; *Pierce v. Tidwell*, 81 Ala. 299.

It is equally well settled that when a contract provides for a minimum royalty, with no express warranty as to minerals being contained in the lands, the lease not providing that the royalty shall not be paid unless ore is found, parol testimony cannot be introduced to show that such a contingency was contemplated prior to or at the time the lease was made.—*Pierce v. Tidwell*, 81 Ala. 299; *Lehigh Zinc & Iron Co. v. Bamford*, 150 U. S. Reports, 666.

TYSON, J.—The lease upon which the plaintiffs predicate their right of recovery is simply a grant to the defendants of the right and privilege to mine all iron ore in and under the land designated therein as belonging to the plaintiff, for a period of ten years. For this right the plaintiffs were to be compensated by a royalty of fifteen cents, to be paid to them by defendants upon every standard ton of ore mined; the defendants obligating themselves to mine not less than one hundred tons per month. This action is to recover five months' royalty of fifteen dollars each.

It is conceded in argument by both sides, that the important question presented is whether the defendants should be allowed to show in defense of the action that the land contained no ore. It is insisted by plaintiffs that this cannot be done because there is no implied covenant or warranty that the land contained minerals. Doubtless it was upon this theory that the trial court sustained demurrers to the several pleas of defendants invoking this defense and excluded the testimony offered to show that fact.

We have but to call attention to the recitals of the lease to see that the payment of royalty was based upon the assumption of the parties that ore existed under the land. The grant was of the ore in place; and if the subject matter of the contract failed, the price is not payable. Indeed, it is expressly stated in the lease that the lands, designated therein as belonging to plaintiffs and which the defendants are granted the right to mine, are "supposed to contain iron ore." When this recital is taken in connection with the fact that the plaintiffs were to be compensated for the right and privilege of mining this ore, by a royalty, we do not see how it can

[Brooks *et al.* v. Cook *et al.*]

be held otherwise, but that the contract was made upon the assumption of the parties that ore existed in the land. This being true, when it became manifest that the parties were mutually mistaken, the contract obligation ceases.

It will be observed that no other compensation for the right to mine the lands was stipulated for except royalty. The plaintiffs thus hazarded their right to compensation upon the existence of ore, as did the defendants hazard the expense of making diligent search for it, as was their duty under the lease. If, however, it is established by actual and exhaustive search that at the time the contract was made, there was in fact no ore in the land, upon no fair and reasonable construction of the contract can the defendant be held liable for royalty. How is it possible for them to be *in default* in mining one hundred tons of ore monthly, if there was no ore to mine? We are not to construe the contract to require the lessees to do an impossible thing. And to require them to pay royalty on ore which never had any existence and which it was not possible for them to mine, would be to require the impossible—to compensate the plaintiffs for a thing which they undertook to sell, but which they never owned—indeed which never had any existence. For after all, the lease was nothing more nor less than a sale by them of iron ore, which they supposed they owned, hidden, it is true, under the earth—a supposition also indulged by the lessees. But if both were mistaken in their supposition as to the existence of the ore, then the obligation of the lessees to mine, upon a discovery of this mistake, was at an end as was likewise their obligation to pay royalty upon the ore to be mined. Similar leases have been construed by other courts and the principles we announce have been applied and the point under consideration expressly decided.—*Muhlenberg v. Henning*, 116 Pa. St. 138; *Kemble Iron Co. v. Scott*, 15 Weekly Notes of Cases, 220; *Blake v. Labb's Estate*, 110 Mich. 608; *Gribben v. Atkinson*, 64 Ib. 651; *Brick Co. v. Pond*, 38 Ohio, St. 65; *Cook v. Andrews*, 36 Ib. 174; *Clifford v. Watts*, L. R. 5 C. C. P. 576.

Reversed and remanded.