[L. A. No. 3633. Department One.—March 13, 1916.]

MINERAL PARK LAND COMPANY (a Corporation), Respondent, v. P. A. HOWARD et al., Appellants.

CONTRACT—EXCUSE OF PERFORMANCE—DIFFICULTY AND INABILITY TO PERFORM.—Where a party has agreed, without qualification, to perform an act which is not in its nature impossible of performance, he is not excused by difficulty of performance, or by the fact that he becomes unable to perform.

ID.—PERFORMANCE DEPENDENT ON EXISTENCE OF SUBJECT MATTER.— Where, however, performance depends upon the existence of a given thing, and such existence was assumed as the basis of the agreement, performance is excused to the extent that the thing ceases to exist or turns out to be nonexistent.

ID.—AGREEMENT TO TAKE GRAVEL FROM PARTICULAR LAND—NONAVAILABILITY FOR USE—PROHIBITIVE COST.—An agreement to take from certain land all the earth and gravel necessary in the construction of a particular work, and to pay for the same at specified rates, contemplates that the land contains the requisite quantity, available for use; and performance is excused, notwithstanding there was a sufficiency of such materials on the land, if they were so situated that the promisor could not take them by ordinary means, nor except at a prohibitive cost, amounting to ten or twelve times as much as the usual cost thereof.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge.

The facts are stated in the opinion of the court.

G. P. Adams, for Appellants.

Amend & Amend, for Respondent.

SLOSS, J.—The defendants appeal from a judgment in favor of plaintiff for $3,650. The appeal is on the judgment-roll alone.

The plaintiff was the owner of certain land in the ravine or wash known as the Arroyo Seco in South Pasadena, Los Angeles County. The defendants had made a contract with the public authorities for the construction of a concrete bridge across the Arroyo Seco. In August, 1911, the parties to this action entered into a written agreement whereby the plaintiff granted to the defendants the right to haul gravel and earth from plaintiff's land, the defendants agreeing to take therefrom all of the gravel and earth necessary in the construction of the fill and cement work on the proposed bridge, the required amount being estimated at approximately one hundred and fourteen thousand cubic yards. Defendants agreed to pay five cents per cubic yard for the first eighty thousand yards, the next ten thousand yards were to be given free of charge, and the balance was to be paid for at the rate of five cents per cubic yard.

The complaint was in two counts. The first alleged that the defendants had taken 50,131 cubic yards of earth and gravel, thereby becoming indebted to plaintiff in the sum of $2,506.55, of which only nine hundred dollars had been paid, leaving a balance of $1,606.55 due. The findings support plaintiff's claim in this regard, and there is no question of the propriety of so much of the judgment as responds to the first count.

The second count sought to recover damages for the defendants' failure to take from plaintiff's land any more than the 50,131 yards.

It alleged that the total amount of earth and gravel used by defendants was one hundred and one thousand cubic yards, of which they procured 50,869 cubic yards from some place other than plaintiff's premises. The amount due the plaintiff for this amount of earth and gravel would, under the terms of the contract, have been $2,043.45. The count charged that plaintiff's land contained enough earth and gravel to enable the defendants to take therefrom the entire amount required, and that the 50,869 yards not taken had no value to the plaintiff. Accordingly the plaintiff sought, under this head, to recover damages in the sum of $2,043.45.

The answer denied that the plaintiff's land contained any amount of earth and gravel in excess of the 50,131 cubic yards actually taken, and alleged that the defendants took from the said land all of the earth and gravel available for the work mentioned in the contract.

The court found that the plaintiff's land contained earth and gravel far in excess of one hundred and one thousand cubic yards of earth and gravel, but that only 50,131 cubic yards, the amount actually taken by the defendants, was above the water-level. No greater quantity could have been taken "by ordinary means," or except by the use, at great expense, of a steam-dredger, and the earth and gravel so taken could not have been used without first having been dried at great expense and delay. On the issue raised by the plea of defendants that they took all the earth and gravel that was available, the court qualified its findings in this way: It found that the defendants did take all of the available earth and gravel from plaintiff's premises, in this, that they took and removed "all that could have been taken advantageously to defendants, or all that was practical to take and remove from a financial standpoint"; that any greater amount could have been taken only at a prohibitive cost, that is, at an expense of ten or twelve times as much as the usual cost per yard. It is also declared that the word "available" is used in the findings to mean capable of being taken and used advantageously. It was not "advantageous or practical" to have taken more material from plaintiff's land, but it was not impossible. There is a finding that the parties were not under any mutual misunderstanding regarding the amount of available gravel, but that the contract was entered into without any calculation on the part of either of the parties with reference to the amount of available earth and gravel on the premises.

The single question is whether the facts thus found justified the defendants in their failure to take from the plaintiff's land all of the earth and gravel required. This question was answered in the negative by the court below. The case was, apparently, thought to be governed by the principle— established by a multitude of authorities—that where a party has agreed, without qualification, to perform an act which is not in its nature impossible of performance, he is not excused by difficulty of performance, or by the fact that he be-

comes unable to perform. (1 Beach on Contracts, sec. 217; *Klauber* v. *San Diego Street Car Co.,* 95 Cal. 353, [30 Pac. 555]; *Wilmington Trans. Co.* v. *O'Neil,* 98 Cal. 1, [32 Pac. 705]; *The Harriman,* 9 Wall. 172, [19 L. Ed. 629].)

It is, however, equally well settled that where performance depends upon the existence of a given thing, and such existence was assumed as the basis of the agreement, performance is excused to the extent that the thing ceases to exist or turns out to be nonexistent. (1 Beach on Contracts, sec. 217; 9 Cyc. 631.) Thus, where the defendants had agreed to pasture not less than three thousand cattle on plaintiff's land, paying therefor one dollar for each and every head so pastured, and it developed that the land did not furnish feed for more than 717 head, the number actually put on the land by defendant, it was held that plaintiff could not recover the stipulated sum for the difference between the cattle pastured and the minimum of three thousand agreed to be pastured. (*Williams* v. *Miller,* 68 Cal. 291, [9 Pac. 166].) Similarly, in *Brick Co.* v. *Pond,* 38 Ohio St. 65, where the plaintiff had leased all the "good No. 1 fire clay on his land," subject to the condition that the lessees should mine or pay for not less than two thousand tons of clay every year, paying therefor twenty-five cents per ton, the court held that the lessees were not bound to pay for two thousand tons per year, unless there was No. 1 clay on the land in such quantities as would justify its being taken out./ In *Ridgely* v. *Conewago Iron Co.,* 53 Fed. 988, the holding was that a mining lease requiring the lessee to mine four thousand tons of ore annually, and to pay therefor a fixed sum per ton, or, failing to take out such quantity, to pay therefor, imposed no obligation on the lessee to pay for such stipulated quantity after the ore in the demised premises had become exhausted. There are many other cases dealing with mining leases of this character, and the general course of decision is to the effect that the performance of the obligation to take out a given quantity or to pay royalty thereon, if it be not taken out, is excused if it appears that the land does not contain the stipulated quantity. (*Brooks* v. *Cook,* 135 Ala. 219, [34 South. 960]; *Muhlenberg* v. *Henning,* 116 Pa. St. 138, [9 Atl. 144]; *McCahan* v. *Wharton,* 121 Pa. St. 424, [15 Atl. 615]; *Boyer* v. *Fulmer,* 176 Pa. St. 282, [35 Atl. 235]; *Bannan* v. *Graeff,* 186 Pa. St. 648, [1 Water & Min.

Cas. 648, 40 Atl. 805] ; *Gribben* v. *Atkinson,* 64 Mich. 651, [31 N. W. 570] ; *Blake* v. *Lobb's Estate,* 110 Mich. 608, [68 N. W. 427] ; *Hewitt Iron M. Co.* v. *Dessau Co.,* 129 Mich. 590, [89 N. W. 365] ; *Diamond I. M. Co.* v. *Buckeye I. M. Co.,* 70 Minn. 500, [73 N. W. 507].)

We think the findings of fact make a case falling within the rule of these decisions. The parties were contracting for the right to take earth and gravel to be used in the construction of the bridge. When they stipulated that all of the earth and gravel needed for this purpose should be taken from plaintiff's land, they contemplated and assumed that the land contained the requisite quantity, available for use. The defendants were not binding themselves to take what was not there. And, in determining whether the earth and gravel were "available," we must view the conditions in a practical and reasonable way. Although there was gravel on the land, it was so situated that the defendants could not take it by ordinary means, nor except at a prohibitive cost. To all fair intents then, it was impossible for defendants to take it. "A thing is impossible in legal contemplation when it is not practicable; and a thing is impracticable when it can only be done at an excessive and unreasonable cost." (1 Beach on Contracts, sec. 216.) We do not mean to intimate that the defendants could excuse themselves by showing the existence of conditions which would make the performance of their obligation more expensive than they had anticipated, or which would entail a loss upon them. But where the difference in cost is so great as here, and has the effect, as found, of making performance impracticable, the situation is not different from that of a total absence of earth and gravel.

On the facts found, there should have been no recovery on the second count.

The judgment is modified by deducting therefrom the sum of $2,043.45, and as so modified, it stands affirmed.

Shaw, J., and Lawlor, J., concurred.