### CHAS. F. NOBLE OIL & GAS CO. v. GIST.
### (No. 2446.)

(Court of Civil Appeals of Texas. Amarillo. March 25, 1925. Rehearing Denied April 15, 1925.)

Waters and water courses ☞158(1)—Mutual erroneous assumption pond contained sufficient water held to render contract unenforceable.

Where both parties to sale of water supply erroneously assumed, as basis for contract, existence of sufficient water in pond to satisfy defendant's demands, such assumption *held* mutual mistake of fact as to material matter, rendering contract unenforceable.

Appeal from Wichita County Court; Guy Rogers, Judge.

Action by V. Gist against the Chas. F. Noble Oil & Gas Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Bonner, Bonner & Sanford, of Wichita Falls, and W. C. Abrams, of Tulsa, Okl., for appellant.

Kay, Akin & Kenley and Kenley, Dawson & Holliday, all of Wichita Falls, for appellee.

JACKSON, J. This suit was instituted in the county court of Wichita county, Tex., by appellee, V. Gist, against appellant, Chas. F. Noble Oil & Gas Company. For cause of action, appellee alleges: That on October 4, 1920, he, by an agreement in writing executed by both parties, agreed to sell and convey, and did sell and convey, to appellant the water rights on appellee's premises, with the privilege of laying water lines and installing the equipment necessary to procure and carry water to the leases, refineries, and gasoline plants of appellant. That it was specifically agreed in said contract that appellant was granted and conveyed and sold an exclusive use of all water on the premises for a term of five years from October 4, 1920, at the expiration of which time appellant should have the option of renewing said contract. That the consideration for said contract and water right was the sum of $4,000, to be paid $1,000 in cash, and the balance to be paid in equal annual installments of $750 each. That $1,000 cash and the $750 installment due October 4, 1921, was paid, but that appellant had failed and refused to pay the second $750 installment, due October 4, 1922, for which amount appellee sued, with interest thereon from October 4, 1921, at the rate of 6 per cent. per annum.

Appellant answered by general demurrer, special exceptions, general denial, and in addition, pleaded:

That the only contract it ever made with appellee contained, among other provisions, the following:

"It is further agreed that, in the event the water supply on the above-described premises becomes exhausted, and is inadequate and insufficient to supply the needs of the party of the second part [meaning appellant], then this contract shall become null and void as to both parties, upon thirty days' notice by party of the second part to party of the first part."

That said contract is no longer in force, because, prior to October 1, 1922, the water supply on said premises failed, had become inadequate and insufficient for appellant's purposes as contemplated and understood by both parties at the time the negotiations were had. That appellant prepared a contract containing said above-quoted provision and sent it to appellee with an advance payment of $1,000, as had been previously agreed, but appellee refused to execute said contract, and induced an employé of appellant, without authority to do so, to execute and deliver a contract substantially the same as the one prepared and sent by appellant, except the above provision, which was omitted. That the omission of said clause was not known to appellant until long afterward, at which time the water supply on the premises had wholly failed, and appellant had notified appellee thereof, and terminated the contract. That appellant required, for its use at its properties and for its tenants, from 3,000 to 6,000 barrels of water per day. That appellee approached appellant and offered to lease to it a certain pond on his premises, and appellant's officers, together with appellee, went to the pond, looked at it, and appellant advised appellee that it would be expensive to install machinery and lay the pipe necessary to supply itself with water, and it would not do so without being assured that the water supply would be adequate and furnish on an average of about 4,500 barrels per day. That appellee assured appellant that for many years he had been familiar with and knew the premises; that it had been used extensively for watering stock from ranches in dry seasons, and that other oil producers had recently connected with the pond, and, with two large pumps running continuously, had not lowered the water; that the pond was underlaid with water-bearing strata and sand; and that it would produce and furnish the quantity of water needed by appellant, all of which was untrue. That appellant was not acquainted with the territory, or the facts regarding the water supply in said pond, and advised

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

appellee it would have to rely on his representations as to the quantity, and was assured by him that the supply would be adequate for more than 6,000 barrels per day, and stated that, should the supply for any reason at any time become inadequate, the contract would be terminated and no further payments demanded.

The appellant relied on the representations and statements ·of appellee, believing they were true, but that said representations were wholly false, and were material. That appellee expended about $15,000 in equipment and pipe line to supply itself with water from said pond, but after about 24 hours the water was wholly exhausted, and appellant, in an effort to secure a sufficient supply, expended large sums of money, by which the supply of water was augmented, but would not furnish to exceed 1,000 barrels per day, and, with such water as could be secured from the pond and other independent sources available to appellant, it continued to use the water for some time, paid the cash payment and the first installment of $750, but during the summer of 1922 the supply of water wholly failed, and appellant was forced to secure water from an independent source at a price in excess of what it agreed to pay appellee, by which appellant was damaged in the sum of $990 as a consequence of the fraud and misrepresentations of appellee, for which sum it reconvened and asked judgment.

Appellant further pleaded that, should it be mistaken as to the fraud and misrepresentations alleged to be practiced upon it by the appellee, then, in the alternative, it alleged that both parties were advised as to the use, purpose, and quantity of the water desired by appellant, and that both parties agreed and assumed that said pond would furnish a sufficient quantity of water, and contracted with reference to said assumed and agreed fact, and that both parties were mistaken in the assumption of said fact, for the reason that the water in the pond was insufficient to supply the quantity needed, and, both parties being mistaken as to the fact of the existence of sufficient water to supply the needs of appellant, there is no liability on the part of appellant to make further payments, and prayed for cancellation.

Appellee, by supplemental petition, excepted to appellant's answer, denied all of the allegations of fraud and misrepresentations, and alleged: That appellant was estopped to deny the validity of the contract sued upon, because it had made its own investigation, went on the ground and accepted the property under the contract, took possession of said property and made improvements thereon, ratified such acceptance, and a year after the execution of the contract paid the first $750 installment due under said contract, with full knowledge of the land and the conditions of the water supply, and ratified and confirmed said contract, and is thereby estopped to deny its validity. That appellant had clothed its agent with apparent authority to execute the contract sued on, and, appellee having dealt with him as the agent of appellant, it is estopped to deny the authority of said agent to make said contract.

The case was submitted to the jury on special issues, and, upon the answers of the jury thereto, judgment was rendered for appellee for the sum of $791.25, with interest at the rate of 6 per cent. per annum from the date of the judgment.

Appellant, by proper assignments, assails the action of the trial court for numerous alleged errors, but, in the view we take of the case, it will be necessary to consider only the error presented in appellant's seventh proposition, which is to the effect that the court erred in rendering judgment in favor of appellee against appellant because the jury, upon sufficient evidence and proper pleading, found that both parties assumed as a fact and a basis for the contract the existence of sufficient water on appellee's premises to supply the needs and demands of appellant, and that the assumption of such fact was a mutual mistake of the parties.

The jury found that at the time of entering into the contract both appellee and appellant believed that the pond had sufficient water and water sand to meet the needs and supply the demands of appellant, and that the water supply from the pond was not as great as contemplated by both parties at the time of entering into the contract. It follows from these findings that in making the contract both parties assumed as a fact, and as the basis for the contract, the existence of sufficient water in the pond to meet the needs and supply the demands of appellant for its purpose, and that a mutual mistake was made about the adequacy and sufficiency of the supply of water. The jury also found, in response to special issues, that appellee represented to appellant that the pond had a supply of water sufficient to meet the needs and requirements of appellant, and that such representation was material, was relied on, and was untrue. These findings disclose that the mistake made by the parties was not only mutual, but was material. The evidence discloses, without contradiction, that appellant expended several thousand dollars in equipment for the purpose of supplying itself with water from the pond, and that in 24 hours after it began pumping water the supply was exhausted; that thereafter it expended large sums in an effort to increase the supply, but was never able to secure more than 1,000 barrels per day; that it required 3,000 barrels

per day for its purposes; and that at the time of abandoning the contract the supply 'had diminished until it furnished something less than 300 barrels per day.

In Edwards v. Trinity & B. V. Ry. Co., 54 Tex. Civ. App. 334, 118 S. W. 572 (writ denied), it is held that a mutual mistake, made by the parties as to a material matter, under well-settled principles, authorizes a cancellation of the contract. In St. Louis S. W. Ry. Co. of Texas v. Johnston, 58 Tex. Civ. App. 639, 125 S. W. 61 (writ denied), the court says:

"The evidence shows that the contract was based on a fact assumed by both parties to the contract; that is, that there was sufficient rock in this particular quarry for the fulfillment of the contract. In this respect there was a mutual mistake, which was material, and renders the contract nonenforceable, as such assumed fact did not in fact exist."

Chief Justice Rainey in this case quotes with approval Cyc. vol. 9, p. 399:

"Where certain facts assumed by both parties are the basis of a contract, and it subsequently appears that such facts did not exist, there is no agreement."

In support of this proposition he cites numerous authorities, among which is Blake v. Lobb's Estate, 110 Mich. 608, 68 N. W. 427, in which case the court says:

"The circuit judge relied on the case of Gribben v. Atkinson, 64 Mich. 651, 31 N. W. 570. It is contended by the plaintiff that that case is distinguishable from this, in that in that case the payments to be made were designated as 'royalty,' while in the present case they are spoken of as 'rent.' * * * In that case, as in this, there was a specific engagement to pay a specified sum at all events, and while, in that case, it was called 'royalty' and in this case termed 'rent,' the agreement was, in both cases, based upon the supposition that ore existed."

For additional authorities sustaining this proposition, see Kelsey v. Mackay, 65 Wash. 116, 117 P. 714; Paxton Lumber Co., Inc., v. Panther Coal Co., 83 W. Va. 341, 98 S. E. 563; Blaney et al. v. Rogers, 174 Mass. 277, 54 N. E. 561; and the authorities relied on in said cases.

The other issues submitted by the court and determined by the jury become immaterial in our opinion, in view of the findings above noted.

For the error of the court in refusing to enter judgment for appellant on the special issues answered by the jury, which establish that both parties to the contract assumed as a fact, for the basis thereof, the existence of sufficient water to supply the demands of appellant, and that the assumption of such fact was a mutual mistake, the judgment is reversed, and here rendered in favor of appellant.