tual fees provision as authorized by Cal.Civ. Code § 1717).

## V

We reverse the judgment of the BAP and remand with instructions to reverse the judgment of the bankruptcy court. Estates is entitled to reasonable attorneys' fees and costs incurred in the proceedings below and on this appeal. REVERSED.

**August E. WAEGEMANN, Barbara A. Waegemann, and Earl Tom Pyle, Plaintiffs-Appellants,**

v.

**MONTGOMERY WARD & COMPANY, INC., Defendant-Appellee.**

No. 82–4260.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 15, 1983.

Decided Aug. 10, 1983.

Douglas W. Allan, Barry & Finley, San Francisco, Cal., for plaintiffs-appellants.

Francis J. Stillman, Burlingame, Cal., for defendant-appellee.

Before DUNIWAY, SNEED and FARRIS, Circuit Judges.

SNEED, Circuit Judge:

This is an appeal from a judgment of the district court, the jurisdiction of which was

based on diversity, 28 U.S.C. § 1332, and which judgment denied a claim by lessors for rescission of a lease based on the doctrine of frustration. We affirm.

## I.

The appellants, August and Barbara Waegemann and Earl Tom Pyle, are owners of a shopping center in Watsonville, California. Montgomery Ward is their lessee. The lease, signed in 1969, provides for a ten-year term followed by two five-year options to renew. The base rent during the initial term was $16,703.00 per year. Clause 17 of the lease, at issue here, establishes that rent during the option periods is to be tied to property taxes:

> 17. Fixed rent during the option periods referred to in Section 4 shall be in an amount equal to the sum of (a) SIXTEEN THOUSAND SEVEN HUNDRED THREE AND NO/100 DOLLARS ($16,703.00), plus or minus, as the case may be, (b) an amount equal to the product of SIXTEEN THOUSAND SEVEN HUNDRED THREE AND NO/100 DOLLARS ($16,703.00) multiplied by the percentage by which the general real estate taxes levied and assessed against the leased premises for the last full tax year prior to the exercise of the option under Section 4(a) for which tax bills shall have been received exceed or are less than the general real estate taxes levied and assessed against the leased premises for the first tax year following the completion of the improvements required to be completed pursuant to Section 15 hereof.

When the contract was made, property taxes in California were based on current appraised fair market value. Before signing the contract the lessors ascertained that in each of the previous five years the assessed property valuations, as well as the property tax rates, in the county had increased. The district court found that the parties "expected that if the value of the property increased during the initial ten (10) year term of the lease then the base rent during the first option period would increase over the base rent during the original ten (10) year term" as well.

These expectations were not fulfilled. On June 6, 1978—during the initial ten-year term—California voters passed Proposition 13, Cal. Const. art. XIIIA, which limits tax on real property to 1% of the county assessor's valuation of the property as of 1975–1976, and allows a maximum increase in the valuation for property tax purposes of 2% per year. As a result the property taxes on the leased premises did not increase with the value of the property as the parties had expected.

On September 12, 1980, Montgomery Ward exercised its option to extend the lease for the first five-year option period. Due to Proposition 13, the property taxes on the parcel had decreased by 5.08%. The rent paid by Montgomery Ward decreased by the same percentage, from $16,703.00 to $15,854.49 per year.[1]

The lessors notified Montgomery Ward that they wanted to rescind the lease. They claimed that Proposition 13 had frustrated the contract and that their performance was therefore excused. When Montgomery Ward refused to pay a rent higher than $15,854.49 per year, the lessors sued in district court for a declaration that the lease was no longer binding. Montgomery Ward counterclaimed for a declaration that the lease was still in effect and for attorneys' fees. The district court found for Montgomery Ward, and the lessors appeal.

## II.

The sole issue on appeal is whether the passage of Proposition 13 excuses the appellants' performance under the lease. Both sides concede that the issue is governed by California law, as provided in the contract. See S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co., 641 F.2d 746 (9th Cir.1981). "The excuse of frustration . . . is a conclusion of law drawn by the court from the facts," Mitchell v. Ceazan Tires, Ltd., 25 Cal.2d 45, 48, 153

1. Appellants' counsel conceded at oral argument that as a result of Proposition 13 the property taxes paid by the lessors decreased by about the same amount as the rent decrease.

P.2d 53, 54 (1944). The determination of a district judge as to a question of the law of the state in which the district is located is reviewed under the "clearly wrong" standard. *In re Mistura, Inc.,* 705 F.2d 1496, 1497 (9th Cir.1983); *Young v. Reynolds Metals Co.,* 685 F.2d 1091, 1092 (9th Cir. 1982). It is under that standard that we review the district court's refusal to excuse the appellants' performance of the terms of the lease.

In applying the equitable doctrine of frustration of contract, California courts "have required a promisor seeking to excuse himself from performance of his obligations to prove that the risk of the frustrating event was not reasonably foreseeable and that the value of counterperformance is totally or nearly totally destroyed," *Lloyd v. Murphy,* 25 Cal.2d 48, 54, 153 P.2d 47, 50 (1944). Application of the doctrine "has been limited to cases of extreme hardship so that businessmen, who must make their arrangements in advance, can rely with certainty on their contracts." *Lloyd v. Murphy,* 25 Cal.2d at 54, 153 P.2d at 50.

▮ Whether Proposition 13 was foreseeable is, as the district court candidly acknowledged, "debatable." However, we need not decide the forseeability issue here because we agree with the district court that the effect of the passage of Proposition 13 is not so substantial as to establish extreme hardship. The lessors continue to receive valuable consideration for the use of their property, even though it is less than they anticipated when they signed the lease.[2] This alone, however, does not warrant rescission of the contract. The doctrine of frustration is inapplicable when an unforeseeable event merely makes performance more expensive or less profitable than anticipated. Invocation of the excuse of frustration requires that the difference be so excessive as to make performance extremely impracticable. *See, e.g., Cutter Laboratories, Inc. v. Twining,* 221 Cal. App.2d 302, 34 Cal.Rptr. 317 (1963); *Lloyd v. Murphy,* 25 Cal.2d 48, 153 P.2d 47 (1944);

*Davidson v. Goldstein,* 58 Cal.App.2d Supp. 909, 136 P.2d 665 (1943); *Grace v. Croninger,* 12 Cal.App.2d 603, 55 P.2d 940 (1936); *Mineral Park Land Co. v. Howard,* 172 Cal. 289, 156 P. 458 (1916). The decreased profits to the lessors under the circumstances of this case do not approach such a level.

▮ Appellants argue that, inasmuch as the purpose of the parties in including Clause 17 in the lease was to tie the rent during the option periods to the fair market value of the property, this purpose was completely frustrated by the passage of Proposition 13. It follows, appellants assert, that their performance should be excused. We disagree. In applying the frustration excuse courts look to see if "the *fundamental reason of both parties* for entering into the contract has been frustrated," *Cutter Laboratories v. Twining,* 221 Cal.App.2d at 315, 34 Cal.Rptr. at 324 (emphasis in original). *See also, e.g., Lloyd v. Murphy,* 25 Cal.2d at 53, 153 P.2d at 50 (quoting 6 S. Williston, *Contracts* § 1955, at 5485–87 (rev. ed. 1938), for the proposition that applicability of the doctrine depends on the near total destruction of "the purpose for which, in the contemplation of both parties, the transaction was entered into"); *20th Century Lites, Inc. v. Goodman,* 64 Cal.App.2d Supp. 938, 943, 149 P.2d 88, 92 (1944) (the doctrine applies in cases of frustration of "the primary and principal purpose" for which the contract was made). The passage of Proposition 13 did not render meaningless the entire lease. The lessors continue to receive valuable consideration in return for the use of their property. Montgomery Ward continues to occupy an affordable property on which it operates its business. The rent on the property is calculated by the escalator index the parties employed. The index has not been rendered inoperative by reason of Proposition 13. All that has happened is that Proposition 13 has made the lease less profitable to the appellants than they anticipated it would be. Many acts of government frequently have a similar effect. That is not enough to excuse performance.

2. By the lessors' estimate, the rent they receive is a little over one-third of the current fair market rent; by Montgomery Ward's estimate, they receive about two-thirds of the fair market rent.

Moreover, it is not clear that both parties intended to tie the option rent directly to the market value of the property. That may have been what the lessors hoped to achieve. They could have done so directly, but they did not. After arms length negotiations, in which at least one other index was suggested and rejected, the parties chose a property tax index and unambiguously wrote this into their contract. Assuming it was chosen as a surrogate for property value its use entails a certain amount of risk. Both parties were aware of this. "The purpose of a contract is to place the risks of performance upon the promisor," *Lloyd v. Murphy*, 25 Cal.2d at 54, 153 P.2d at 50. The appellant in our view assumed the risk of an event such as the passage of Proposition 13. The excuse of frustration serves to mitigate the costs of disaster, not to provide a means of escape from a contract less profitable than anticipated.

The decision of the district court was not clearly wrong.

AFFIRMED.