## VOLNEY E. HOWARD ET AL. v. S. R. THROCKMORTON ET AL.

TENANTS IN COMMON—PARTIES TO ACTION—TRUSTEE AND CESTUI QUE TRUST.—One of several tenants in common conveyed his interest to a third party to secure a debt: *Held*, That both the grantor and grantee were necessary parties to an action between the co-tenants for an accounting.

ID.—STATUTE OF LIMITATIONS.—In such an action by tenants in common against a co-tenant in possession, the complaint was demurred to on the ground that the cause of action was barred by the Statute of Limitations; but the Court in its decree disallowed all items not accruing within four years before the commencement of the action. *Held*, That this disposed of the question of the Statute of Limitations.

ID.—DELIVERY OF DEED—RELATION.—A deed delivered to the clerk in order to stay execution, upon affirmance, takes effect as of the date of delivery to the Clerk.

ID.—RENTS AND PROFITS RECEIVED BY A TENANT IN POSSESSION—ACTION FOR ACCOUNTING.—*Held*, upon the facts found by the Court below, and stated in the opinion, that the Court did not err in deciding that the defendant T. was liable to his co-tenants for the moneys he realized from the pasturage of the common property, and in deciding that such earnings were within the legal designation of rents, for which an action could be maintained by a co-tenant. *Held, further*, that T. was not entitled to an allowance for his services in carrying on the business of the ranch.

ID.—ID.—ID.—If one tenant in common occupies the property and cultivates it, investing his own capital and labor at his own risk, the law says that he shall have the product, if he has made no contract with his co-owners, but if he rent the property to others he is bound to account, and an action may be maintained by his co-tenant prior to a partition of the property.

APPEAL from a judgment for the plaintiffs, and from an order denying a motion for a new trial, in the Twenty-second District Court, County of Marin. TEMPLE, J.

A petition for rehearing was filed in this case after judgment, and denied.

*Wm. Irvine*, for Appellants.

By the common law, one tenant in common has no remedy against the other who has exclusively occupied the premises and received the entire profits, unless he is ousted of possession, when ejectment may be brought, or unless the other is

acting as bailiff of his interest by agreement, when the action of account will lie. (*Pico* v. *Columbet,* 12 Cal. 414; *Goodenow* v. *Ewer,* 16 id. 461; *Abel* v. *Love,* 17 id. 233; *Bradley* v. *Harkness,* 26 id. 69; *Skillman* v. *Lachman,* 23 id. 201; *Duryea* v. *Burt,* 28 id. 587; *Settembre* v. *Putnam,* 30 id. 493; *McConnell* v. *Denver,* 35 id. 369; *Thomas* v. *Thomas,* 5 Wels., Hurls. & Gor. 32, 33; *Peck* v. *Carpenter,* 7 Gray, 283; *Izard* v. *Bodine,* 3 Stock., N. J. Eq., 403; *Sargent* v. *Parsons,* 12 Mass. 153; *Neil* v. *Shackleford,* 45 Tex. 119.) The moneys received for the pasturage of cattle are neither "rents," nor "conventional rents." The farmer is not the landlord of the drover; he does not rent his land to the cattle-owner, but, at the most, is only an agister of the cattle depastured. And such is exactly the character the defendant, Throckmorton, assumed and always bore in this pasturage business. (Civ. Code, § 3051.)

*J. M. Seawell,* for Respondents.

The defendant Haggin was a proper, if not a necessary party defendant. (Code Civ. Proc., § 475; *Bates* v. *Ryberg,* 40 Cal. 463.) There was no error in requiring appellant to account for the rents and profits received by him. (*Goodenow* v. *Ewer,* 16 Cal. 464; Co. Lit., c. 4, § 292, 188 a, Butler and Hargrave's notes; id. §§ 199 b, 200 a, 200 b, 322; Doctor v. Student, Dialogue 1, c. 19; *Apriz et Flower in le Chancery,* Sid. 33; *Strelly* v. *Winson,* 1 Vern. 297; *Drury* v. *Drury,* 6 Car. I., f. 74, 1 Ch. R. 49; *Dean* v. *Wade,* 16 Car. I., f. 80, 710, 1 Ch. R. 48; *Leach* v. *Beatties,* 33 Vt. 199; 1 Story's Eq. Jur., §§ 64 i., 76, 80, 446, 447, 450, 451, 454, 466; *George* v. *Ransom,* 15 Cal. 324; *Clark* v. *Huber,* 20 id. 196; *Muller* v. *Boggs,* 25 id. 175; 1 Bl. Com. *92; 2 id. *272; *Pope* v. *Harkins,* 16 Ala. 321; *Montgomery* v. *Swan,* Drury's Sel. Cas. Temp. Napier, p. 520; *Hannan* v. *Osborn,* 4 Paige Ch. 343.) Appellant was not entitled to an allowance for his services. (*Goodenow* v. *Ewer,* 16 Cal. 472.)

MYRICK, J.:

This is an action for an accounting, to be had between plaintiffs and defendants for the rents, issues, and profits of a large tract of land situate in Marin County, received by the

defendant Throckmorton since March 1st, 1872.   It is alleged in the complaint that the defendant Throckmorton is, and was during all of said period, the owner of twenty-one twenty-fifth parts of the premises; the plaintiff Goold, of two twenty-fifth parts; the plaintiff Howard, of one twenty-fifth part; and facts are alleged showing that the defendants Haggin and Thornton, as administrators of the estate of Perley, deceased, were interested in the remaining twenty-fifth part. The action was commenced October 30th, 1877.   A hearing of the case was had before the Court, and in its findings, after stating the ownership and interests of the parties in the land, the Court found as follows :

"For many years prior to March 5th, 1872, and from thence hitherto, the defendant Throckmorton has possessed, occupied, used, and enjoyed the premises described in the complaint in the following manner, viz.: He has demised and let certain fields and parcels of said premises, from year to year, to tenants of him, said Throckmorton, by written leases, and has collected and appropriated the rents of said demised portions to his (said Throckmorton's) own use.   Said rented portions of said premises have been under fence, and thereby separated from the remainder of said premises.   The part of the said premises not rented, susceptible of use for farming purposes, has been used as a pasture ranch for pasturage purposes, excepting a small portion around and in the neighborhood of the ranch-house, which has been cultivated and used by said Throckmorton to raise hay, fruits, vegetables, etc., for his own use—for feeding his own animals and men.   The said ranch has been carried on by said Throckmorton, under the immediate charge of his foreman or superintendent, under his (Throckmorton's) directions—the latter giving to it also his particular personal care and attention, it being the principal business in which he has been engaged for many years.   As a general thing, however, said Throckmorton was personally present on the ranch only from Saturday to the following Monday of each week, the balance of the time being spent by him mostly in San Francisco.

"As far as said ranch has been used for pasturage purposes, the course of the business has been for his foreman or super-

intendent to receive the stock to be pastured—mostly dairy
cows and young cattle and calves—to take the count of them
as they came on the ranch, and also when they are taken off;
to assign to the different bands of cattle ranges for feed and
watering places, and having them under his immediate charge
and direction; to hold rodeos, when necessary, of the different
bands of cattle, and change them from one feeding-ground to
another when he deemed it advisable or necessary.    The
owners of dairies usually rented small houses on the ranch
with a few acres of ground, where they milked their cows
and, subject to the above-mentioned control of the superin-
tendent, had the care of the same.    The defendant Throck-
morton employed more or less hired help in conducting the
business of the ranch—to make and repair fences, roadways,
and other farm work, and to assist at the rodeos as occasion
required.    No cattle were permitted by Throckmorton to be
taken on or to go off the ranch, excepting it was done with
the consent and under the direction of his foreman or super-
intendent, who always personally counted the cattle as they
came on and went off the ranch.

"For the pasturage aforesaid to the cattle depastured,
Throckmorton charged and collected for each head of the cat-
tle pastured, according to a scale of prices fixed by him, a
certain price, varying according to the grade of the cattle as
scaled by him, for the actual time they were pastured, whether
per day, per week, or per month, as the case might be.    The
cattle were liable to be removed from the ranch at any time,
at the option of Throckmorton or of the owner, but the
charge for pasturage always required to be first paid.    In
carrying on this business of the ranch, Throckmorton has
necessarily expended large sums of money in making and re-
pairing fences, making and maintaining water-troughs and
water places for cattle, making and maintaining necessary
roadways, and in paying necessary employees.    He has also
for many years carried on the business of depasturing cattle
for hire, and in protecting the property against waste and
trespass.    His co-tenants have never contributed or paid any-
thing towards the improving or protecting of the common
property, or for taxes, or any other purpose in connection
therewith.    Neither of the co-tenants of defendant Throck-

morton has ever been in the actual possession, or use, or occupation of the common property or of any part of it; nor have they or either of them ever demanded to be let into possession; nor has Throckmorton ever denied their right to enter into joint possession with him, or ever excluded them therefrom; but they have, and each of them has remained out of actual possession; and neither of them has, until the filing of the complaint herein, ever demanded of Throckmorton that he account to them, or either of them, for rents collected by him, or of moneys received by him for pasturage, or for any use or occupation of the common property, excepting that the defendant Thornton, administrator of the estate of D. W. Perley, deceased, demanded an account of the rents and profits of said premises, on behalf of the estate of Perley, some time in the summer of 1877, with which demand said Throckmorton did not comply.

"Said Throckmorton, in his use of the ranch for pasturage purposes as above stated, has not used the same to the extent of its capacity, but has purposely omitted to do so, and has at all times restricted the number of cattle taken in to pasture to a limit which would not exceed said Throckmorton's due proportion of the use of the property, and so that he should not take more than his just share and proportion of the pasturage grown and produced on the ranch; and I find that the manner in which he has used the property has improved the estate.

"I find that the aggregate of the rents collected by Throckmorton from tenants of his (excluding the sum received for pasturage), parcels of the ranch, one year with another, have not at any time been equal to the sum of the taxes assessed upon the property, which taxes he has always paid.

"I further find that the aggregate of the amounts received by Throckmorton for rents and pasturage exceed the sum of said taxes and all other expenses incident to the care and management of the ranch."

Thereupon the Court ordered an accounting to be had before a referee: "The account to be taken so as to state separately the sums received for conventional rents, and the sums received for pasturage, and also an account of all sums paid, laid, and expended by said Throckmorton in and about the

letting of the premises, the pasturing of cattle, and putting
and maintaining the premises in a condition suitable to the
use that he has made of the premises, for which he is ordered
to account, including the care and management of the prem-
ises.   It is further ordered that the like set of accounts shall
also be taken and stated in like manner as hereinbefore di-
rected, commencing on the 31st day of October, 1873."

The report of the referee was filed and exceptions thereto
overruled, and on the 9th of August, 1879, the Court made
its final decree, confirming the report, except that the Court,
on motion of plaintiffs' attorney, disallowed all items as to
rents, profits, and sums received by Throckmorton for pastur-
age which were earned prior to October 31st, 1873.   The de-
cree then continued:

"And it appearing from said report that between the 31st
day of October, 1873, and the 1st day of July, 1879, the said
Throckmorton received for conventional rents of said prem-
ises the sum of twenty thousand one hundred and eighty-nine
dollars and ten cents, and for pasturage of cattle thereon, the
sum of seventy-seven thousand one hundred and twenty-
seven dollars and ten cents, and during the same period, ex-
pended for taxes and other necessary expenses the sum of
thirty-eight thousand nine hundred and sixty-one dollars and
twenty-eight cents; and that between the 31st day of October,
1873, and the 9th day of December, 1877, the said Throck-
morton received for conventional rents of said premises the
sum of fourteen thousand one hundred and seventy-five dol-
lars and sixty-seven cents, and for pasturage of cattle thereon,
the sum of fifty-one thousand three hundred and ninety-five
dollars and forty-nine cents, and during the same period ex-
pended for taxes and other necessary expenses, the sum of
twenty-nine thousand one hundred and twenty-nine dollars
and fifty-two cents; and that between the 31st day of Octo-
ber, 1873, and the 6th day of September, 1878, the said
Throckmorton received for conventional rents of said prem-
ises the sum of seventeen thousand and eighty-two dollars and
thirty-eight cents, and for pasturage of cattle thereon the
sum of sixty-four thousand and ninety-eight dollars and thirty-
nine cents; and during the same period expended for taxes
and other necessary expenses the sum of thirty-three thou-

sand seven hundred and ninety-eight dollars and eighteen cents, the Court now finds as a conclusion of law that the said Throckmorton, in his account with plaintiff Goold, should be charged with the said sums of money received by said Throckmorton for rents and pasturage from the 31st day of October, 1873, to the 1st day of July, 1879, and is entitled to be credited with said sums of money paid out by him for taxes and expenses between said last-named dates, as aforesaid. That the said Throckmorton in his account with said Howard, should be charged with said sums of money received by said Throckmorton, for rents and pasturage from the 31st day of October, 1873, to the 9th day of December, 1877, and is entitled to be credited with said sums of money paid out by him between said last-named dates, for taxes and expenses as aforesaid. And that said Throckmorton, in his account with said James D. Thornton, administrator of the estate of Duncan W. Perley, deceased, should be charged with said sums of money received by said Throckmorton for rents and pasturage between the 31st day of October, 1873, and the 6th day of September, 1878, and is entitled to be credited with said sums of money paid out by him between said last-named dates, for taxes and expenses as aforesaid; and that said Haggin is entitled to no relief in this action for the reason that his interest in said premises was acquired after the commencement thereof.

"On motion of counsel for plaintiffs, it is ordered, adjudged, and decreed, that said plaintiff, Edmond L. Goold, have and recover of and from said defendant, Samuel R. Throckmorton, the sum of four thousand six hundred and sixty-eight dollars and forty-three cents, and that said plaintiff, Volney E. Howard, have and recover of and from the said Samuel R. Throckmorton the sum of fourteen hundred and fifty-seven dollars and eighty-two cents, and that the said James D. Thornton, administrator of the estate of Duncan W. Perley, deceased, have and recover of and from the said Samuel R. Throckmorton the sum of eighteen hundred and ninety-five dollars and thirty cents, and that said plaintiffs also have and recover of and from said Samuel R. Throckmorton said plaintiffs' costs and disbursements in this action, taxed as two hundred and twenty-five dollars and ten cents.

"It is further ordered, adjudged, and decreed, that this judgment and decree is without prejudice to said Haggin's right to an account for rents, issues, and profits of said premises received by said Throckmorton since the 6th day of September, 1878."

The defendant, Throckmorton, moved the Court for a new trial. In denying the motion, the Court said:

"Perhaps the position of counsel that prior to the statute of Anne, there was no remedy either at law or equity, except as an incident to an action of partition by one tenant in common to his co-tenants, for rents received, may be questioned. There is hardly sufficient depending upon it in this discussion to make it profitable to do so. We are no longer under a system in which form is of more importance than substance. At common law it seems the action of account would lie only where there was some relation by contract between the parties. This was one aspect in which manifest defect had not been supplied by a clumsy fiction. The statute of Anne furnished a remedy, but the same sense of justice which induced the statute must frequently have driven the Courts prior to that time to resort to some expedients.

"But unless the rents belonged to the co-tenant why should he recover them in an action of partition? If they did belong to him, what is there in that relation which should prevent his recovering them without terminating the relation in the same proceeding? There is no reason which I have been able to discover.

"If they are the property of the co-tenant, he ought to have them, and the present seems the most convenient, and, therefore, the proper form of action.

"But I cannot understand the California cases as the learned counsel does. In *Pico* v *Columbet,* 12 Cal. 414, Judge Field seems to me to imply all the way through, a distinction between rents and profits, *made* by a co-tenant in the sole occupancy, and rents *received* by a co-tenant from others who, as tenants, have taken the risk of payments, and have mingled their labor with the profits. (See criticism of *Harman* v. *Osborn,* p. 423 *et passim.*) The case clearly implies, I think, that for rents and profits of the latter class, an action will lie. That case appears to be justly subject to

criticism in this, that the learned Judge applies his reasoning to the complaint, which, I do not think, he properly construed, while the real question before him was as to the correctness of the judgment on the merits, to which all the arguments and learning justly applied.

"And, I think, this view is directly asserted in *Goodenow* v. *Ewer*, 16 Cal. 46. There the distinction I have attempted to state, between rents and profits *made* by a co-tenant, and those *received*, is clearly pointed out as the reason why a recovery can be had in one case, and not in the other. True, the Judge states that most of the cases, when the right has been sustained, are actions of partition in which the Court of Equity had, by means of that suit, obtained jurisdiction. Now, I think it is the liability of the defendant and a corelative right in the plaintiff which gives the Court jurisdiction.

"And this brings me to the real question in the case, and the only one upon which I have been able to doubt: Were the rents and profits charged and recovered in this case *received* by Throckmorton, or *made* by him ? Upon this subject I do not speak with any considerable confidence.

"The circumstances are quite unusual, and from one point the case seems plain enough for the plaintiffs, and from a different standpoint appears plainly for defendant. New analogies and new reasoning must be found for novel cases.

"The parties own a large tract of land near San Francisco, which is better adapted for grazing than any other use. The defendant has been in the sole possession, but has not excluded his (co) tenants. Leaving out the other tenants, he has constructed small houses at different points, with corrals and other appointments suitable for dairies. These are occupied, with the permission of Throckmorton, by various persons who are engaged in dairying. They have cows and young stock, such as is usually kept by those who are engaged in such business. So far as they are used, these cows are looked after by their owners, who live in these houses on the land.

"The defendant keeps a superintendent or manager, whose duty it is to keep these herds separate, and sometimes rodeos are held to divide the stock. The cows, however, would naturally not wander much from where they are milked, and the

main duty of herding would inevitably fall upon the owners who are using them; in fact, they as exclusively occupy their respective portions of the land as though they owned them. They pay no rent, however, *eo nomine,* but they pay so much *per capita* of their stock, and the sum varies as the number of the herd varies. Here, certainly, is no ordinary contract of agistment. Defendant neither performs the labor nor assumes the responsibilities of agisters. He takes some risk from the season, as whether pasturage is good or not, but so do all landlords who take a share of the product for rent. The risk of the seasons is a false quantity in the discussion. The material question is, has the co-tenant *made* the profit by using the land himself, or has some one else paid him for the profit he can make by using it. The duty of the manager is little more than rent-gatherer, and most of his duties point to their collection. The sum so received may not be conventional rents, although I believe they are exactly that, and properly so designated; but it seems to me clear, that they are money received from third persons, as a consideration for the use of the land, and not profits made by defendant in the use of the land himself."

Referring to the various questions presented on this appeal, we will say:

1. We think all the parties to this action were necessary parties in order to have a proper accounting and an ascertainment of their respective rights and interests.

2. The decree of the Court disposes of the question of the Statute of Limitations, by disallowing the items earned before October 31st, 1873. (Code Civ. Proc. 343.)

3. The findings are sufficient, for the purposes of this decree, as to when the title of Howard and Goold, and Perley or his successors, became vested, viz., the date of the delivery of the deeds to the clerk of the Court, December 12th, 1872.

4. We have not been referred to any decision tending to show that Throckmorton was entitled to have allowance for his services in carrying on the business of the ranch.

5. The principal point in the case, and the only one upon which we have doubt, is the assignment that " the Court erred in deciding that Throckmorton was liable to the plaintiffs and the defendant, Thornton, administrator of Perley, for the

moneys he realized from the pasturage of the ranch, and in deciding that such earnings are within the legal designation of rents, or rents, issues, and profits, as between co-tenants under the circumstances of this case and in an action for account."

The decision of this point turns upon whether, under the facts found by the court below, the moneys received by Throckmorton were received by him as rents, issues, and profits, in the ordinary acceptation of the words, or were moneys *made* by him, as fruits of his own industry. If A., one tenant in common, occupies the property and cultivates it, investing his own capital and labor, at his own risk, the law says he shall have the product, if he have made no contract with his co-owner; but, if he rent the property to others, he is bound to account. The Judge of the Court below was of opinion that this case falls within the principle concerning rents, and therefore held that the defendant Throckmorton was accountable, and we are opinion that the Court did not err therein.

Judgment and order affirmed.

SHARPSTEIN, J., and McKEE, J., concurred.