[No. 8629. In Bank.—December 28, 1885.]

## THOMAS H. WILLIAMS, APPELLANT, *v.* HENRY A. MILLER ET AL., RESPONDENTS.

AGISTMENT OF CATTLE—CONTRACT FOR CONSTRUED.—The plaintiff and defendants entered into a contract whereby the former agreed to agist and pasture on his land certain cattle of the defendants, for the term of one year, and the latter agreed to pasture thereon, at their own cost and expense for herding, all the cattle it should be capable of grazing, not less than three thousand head, and to pay therefor the sum of one dollar per head. The defendants pastured seven hundred and seventeen head of cattle on the land, and paid therefor at the agreed rate, but refused to pasture any more because the land was incapable of grazing them. The action was brought to recover the balance alleged to be due for the pasture of three thousand head of cattle. *Held,* that the contract was one of agistment, and not of lease, and that the defendants were not liable for the balance.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion.

*G. W. Gordon,* for Appellant.

*Robinson, Olney, & Byrne,* for Respondents.

BELCHER, C. C.—The plaintiff, being the owner of about twenty thousand acres of swamp and overflowed

land near the mouth of the San Joaquin River, on the twenty-first day of March, 1877, entered into a written contract with the defendants "to agist and pasture" upon his land certain cattle belonging to defendants, for the term of one year from the date of the contract. The defendants on their part agreed "to pasture on said land, at their own risk and cost for herding, etc., all the cattle it shall be capable of grazing, over and above the sheep hereinafter mentioned, and in no case less than three thousand head," and to pay therefor one dollar for each and every head so pastured; one half of the money to be paid when the cattle are driven to the land, and the other half in six months from that time.

The defendants did not see the land or know of its condition when the contract was made, but in 1864 and again in 1871 they had pastured a large number of cattle upon it, and the land then furnished very valuable summer pasture. At that time the surface of the ground was covered by a sod from one and a half to two and a half feet thick, made of vegetable matter, half dead and half alive, and which was sufficient to sustain cattle passing over it.

Between 1871 and 1877 efforts were made to reclaim the land by building levees around it, and the sod, with the exception of a few acres near Webb's Landing and a few other scattered patches, was burned off.

When the contract was made the levees were broken and the tide ebbed and flowed over the whole tract, with the exception of the few places where the sod had not been burned, and this condition continued during the whole year.

Grass grew on the unburned places, but with the exception of that near Webb's Landing, the ground intervening was so miry that cattle could not be driven or taken to them.

In May the defendants sent to the tract near Webb's Landing, by boat, 717 head of cattle, and on the 7th of

June they paid the plaintiff for their pasturage $717. The cattle remained there about three months, during which time the feed was consumed and 134 head were lost. The rest of them had to be taken away, or, as the herder testified, "we would have lost them all."

This action was commenced to recover from the defendants the sum of $2,383, which, it is alleged, is still due for the cattle which the defendants obligated themselves by their contract to send to and pasture on the plaintiff's land. The case was tried by the court, and judgment entered in favor of the defendants. The appeal is from the judgment and an order denying a new trial.

The decision in the court below was made upon the theory that the contract was not a lease of the land, but an agreement on the part of the plaintiff to pasture the defendants' cattle at a certain stipulated price per head, and that, being unable to furnish the pasturage, he could not require the defendants to pay for what they did not and could not receive.

It is claimed for the appellant that this theory was wrong; that the contract was in effect a lease, and the money to be paid rent, and that the respondents cannot relieve themselves from the payment of the stipulated rent, because they were unable to pasture upon the land as many cattle, or for so long a time, as they supposed they could when they took the lease.

We think the court was right in its construction of the contract. The plaintiff undertook to agist and pasture the defendants' cattle, and reserved the right to pasture on the land, after August 1st, ten thousand head of sheep belonging to himself, provided the sheep should not interfere with the cattle.

The defendants agreed to pasture on the land all the cattle it was capable of grazing, and in no case less than three thousand head, and to herd them at their own risk and cost.

Webster defines the word "agist" to mean "to take to graze or pasture at a certain sum," and "agistment" as "the taking and feeding other men's cattle in the king's forest, or on one's own land, at a certain rate."

No particular words are necessary to create a lease. "Whatever words are sufficient to explain the intent of the parties, that one shall divest himself of the possession, and the other come into it, for such a determinate time, such words, whether they run in the form of a license, covenant, or agreement, are of themselves sufficient, and will, in construction of law, amount to a lease." (Bac. Abr., tit. Leases; Bouvier's Law Dict., tit. Lease.)

Do the words used here show that it was the intention of the parties that the one should divest himself of the possession of the land and the other take possession? If so, why did the contract provide that the defendants should bear the cost and risk of herding their own cattle? If they had a lease, they were required to do that, and no such provision was necessary.

We think the contract was one for the agistment of cattle, and that the condition of the defendants' agreement was that the land should be "capable of grazing" them. Both parties evidently contemplated that it would be capable of grazing more than three thousand head, or no reservation would have been made of the right to pasture thereon ten thousand head of sheep. As they were mistaken in this, it cannot be supposed that it was intended that defendants should place their cattle there to be starved or drowned, and failing to do that, be required to pay the full price for their pasturage.

The judgment and order should be affirmed.

SEARLS, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.