[L. A. No. 7076. In Bank.—September 15, 1922.]

B. FARRELL, Respondent, v. E. A. PARKFORD, Appellant.

[1] Contract — Sale of Manure — Construction — Bulk and not by Ton.—A contract for the sale of all of the manure and fertilizer on a certain field to be removed within a period of one year from November 1, 1918, for the sum of $7,500, payable $1,000 on the signing of the contract and at least $500 on January 1, 1919, and a like sum on the first day of each succeeding month, the purchaser to pay one dollar for each ton of manure removed and the five hundred dollar payments to apply on the tonnage removed during the month in which such payment was made, was a sale in bulk for $7,500 and not a sale by the ton, since the requirement that one dollar per ton was to be paid upon the removal of the manure was not inserted for the purpose of fixing a tonnage valuation but for the protection of the seller against the removal of any large portion of material without payment within the month of such removal.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. L. Abrahams and P. B. D'Orr for Appellant.

Fred L. Dreher and James, Pace & Smith for Respondent.

RICHARDS, J., *pro tem.*—This appeal is from a judgment in the plaintiff's favor in an action brought to recover the sum of $4,500 with interest alleged to be the balance due plaintiff upon a certain contract in writing for the purchase by the defendant from the assignor of plaintiff of certain manure and fertilizer upon a certain portion of a ranch in Nevada known as the Marker Field. The defendant in his answer admits the making of said contract, but denies that the plaintiff's assignor performed the conditions and covenants therein contained to be by her kept and performed; and denies that any sum whatever remains or is due thereon. As a special defense the defendant alleges the making of certain representations by the manager of said ranch who was the agent and representative of the plaintiff's assignor during the negotiations leading up to said contract as to the amount of manure and fertilizer upon said portion of said ranch covered by said contract, upon which representations said defendant alleges that he relied in entering into the same, and which proved to be false and untrue. The defendant also, and as a further and separate defense, alleged that said contract was entered into under a mutual mistake of fact on the part of the parties thereto as to the amount in tonnage in manure and fertilizer upon said premises, and that to the extent of that mistake the consideration of said contract had failed. The cause proceeded to trial upon the issues as thus framed, at the conclusion of which the trial court made its findings of fact and conclusions of law, wherein the court found that the parties had entered into the contract as alleged and admitted in their respective pleadings, and that plaintiff's assignor had fully performed the covenants and conditions thereof to be by her performed; that the plaintiff's assignor or her agents or representatives had made no false or fraudulent representations as to the subject matter of said contract as alleged in the said defendant's separate answer and defense, nor had the said defendant relied upon any such representation in entering into said contract; that said contract was not entered into under any mutual belief

or mistake of the parties as to the amount of material forming the subject matter of said contract, and that no such belief or mistake was the moving cause of the execution of the same; and that there was no failure of consideration on the part of plaintiff's assignor for the same. The court further found that the defendant by the terms of said contract purchased from the plaintiff's assignor in bulk all of the manure and fertilizer on the premises named in the contract for the total sum of $7,500, upon which purchase price thereof the sum of $3,000 had been paid according to the terms and at the times specified in said contract, but that no further payments had been made thereon and that there remained and was due and payable thereon the sum of $4,500 with interest, which principal and interest amounted in the aggregate to the sum of $5,077.84, for which sum judgment was accordingly ordered and entered. It is from such judgment that the defendant has taken and prosecutes this appeal.

[1] The first contention of the appellant is that under the terms of the contract in question, as properly construed, the purchase price of the said manure and fertilizer to be purchased by him was to be calculated at the rate of one dollar per ton thereof upon said premises and removed by him therefrom up to the amount of 7,500 tons, and that in fact there proved to be but about 2,500 tons of said material thereon, of which said defendant had removed but 2,280 tons, and for which plaintiff's assignor had been fully paid, and in fact overpaid; and that the deposit of said material having been exhausted he was not liable to pay the plaintiff any more money upon said contract. This contention requires examination of the terms of said contract with a view to its proper interpretation. The first clause in said contract provides "That in consideration of the money to be paid at the time and in the manner hereinafter mentioned, the said party of the first part hereby sells, assigns, and transfers to the party of the second part, all manure and fertilizer on that part of the Rodgers or Reservation Ranch in section 23, and known as the Marker Field; and hereby agrees to allow the party of the second part a period of one (1) year from the first day of November, nineteen hundred and eighteen, and up to the first day of November, nineteen hundred and nineteen, in

which to remove the said manure and fertilizer from the said land.'' It then proceeds to provide that ''the party of the second part agrees and covenants with the party of the first part as follows:

''First: To pay the party of the first part as the purchase price for all of said manure and fertilizer on the land described, the sum of seven thousand five hundred ($7,500.00) dollars at the times and in the manner following, that is to say:

''One thousand ($1,000.00) dollars to be paid on the signing of this contract, and at least five hundred ($500.00) dollars on the first day of January, 1919, and a like sum of five hundred ($500.00) dollars on the first day of February, 1919, and on the first day of each succeeding month. The said payments of five hundred ($500.00) dollars being minimum payments on this contract, and shall apply upon the payment of the purchase price which shall be made as follows:

''The party of the second part shall pay or cause to be paid to the party of the first part, one ($1.00) dollar for each ton of manure removed from the said ranch until the whole of said purchase price has been paid. Provided, however, that in making settlement, the five hundred ($500.00) dollar payments shall apply on the tonnage removed during the month in which said five hundred ($500.00) dollar payment is made.''

It seems to us clear that the interpretation of the foregoing provisions of said contract which the trial court placed upon them must be upheld. The plaintiff's assignor agreed to sell, and the defendant agreed to buy, all of the manure and fertilizer upon the designated premises, and agreed to remove the same within a period of one year from November 1, 1918. For this bulk amount of said material the defendant agreed to pay the sum of $7,500. He was to make this payment at the times and in the manner following: $1,000 upon the date of the execution of the contract; $500 on January 1, 1919, and a like sum on the first day of each succeeding month until the whole purchase price of said material had been paid. These monthly installment payments were, however, to be minimum payments, since the defendant was to pay for said material as he removed the same, at the rate of one dollar for each ton of said material removed from the said ranch, until the whole

of said purchase price had been paid; thereafter whatever remained of said material upon said premises belonged to said defendant without further payment, subject to the necessity of the removal of the same by him within the period of one year from November 1, 1918. Such was the plain intendment of this contract. The requirement therein that one dollar per ton was to be paid upon the removal of the manure was not inserted therein for the purpose of fixing a tonnage valuation thereon, but was evidently inserted for the protection of the seller against the removal of any large portion of said material without payment therefor within the month of such removal. The amount of said material so contracted for in bulk upon said premises was possible and entirely susceptible of estimation as to its probable tonnage by the parties to the contract. If that tonnage did not measure up to the defendant's estimate and anticipation, that, in the absence of any fraud or misrepresentation on the part of the other contracting party, was entirely the defendant's concern. In this aspect of the case it differs in no respect from the purchase of any other specific article of personal property for a fixed price for the whole; as of a herd of ranch cattle (*Cole* v. *Smith,* 26 Colo. 506 [58 Pac. 1086]); or an entire lot of goods in a certain warehouse (*Brawley* v. *United States,* 96 U. S. 168 [24 L. Ed. 622, see, also, Rose's U. S. Notes]); or of all the lumber of the seller then on hand in a certain mill (*Inman Bros.* v. *Dudley etc. Lumber Co.,* 146 Fed. 449 [76 C. C. A. 659]); or all of the coal in place in a certain ledge (*Timlin* v. *Brown,* 158 Pa. St. 606 [28 Atl. 236]). In every such case the contract is held to be only for the sale of the specific article or articles in bulk for a gross price, and the fact that upon delivery the thing sold proves less in number or weight or measurement than was the estimate of the parties at the time of the purchase, furnishes no defense against the payment of the entire purchase price in the absence of fraud or misrepresentation upon the part of the seller. The foregoing authorities fully sustain this doctrine, and in fact go so far as to give it application in cases where the quantity is estimated with the qualification of "about," or "more or less," the cases holding that the contract applies to the specific goods and the naming of the quantity is not regarded in the nature of a warranty but only as

an estimate of the probable amount in reference to which good faith is all that is required of the party making it (Benjamin on Sales, 7th ed., p. 713). The cases relied upon by the appellant do not militate in any degree against this doctrine; the case of *Mineral Park Land Company* v. *Howard*, 172 Cal. 289 [L. R. A. 1916F, 1, 156 Pac. 458], upon which the appellant chiefly relies, is easily distinguishable from the case at bar. In that case the contract was one by which the plaintiff granted to the defendants the right to haul gravel and earth from plaintiff's land, the defendants agreeing to take therefrom all that was necessary in the construction of a certain fill and cement work on a proposed bridge, estimated at approximately 114,000 cubic yards, and for which they agreed to pay five cents per cubic yard. After extracting a little less that one-half of the specified amount of said material, the defendants ceased the work of extraction and refused to pay for more than the amount actually taken. The trial court found that the deposit of said material on the plaintiff's land was far in excess of the amount taken, but that the same could not be practically removed, and hence that it was not in the contemplation of the parties that the defendants should take and pay for something the removal of which was not practicable. The distinction between the cases is obvious, since in the cases cited there was no contract to pay a lump sum for a specified article, but only an agreement to pay so much per ton for material the removal of which was practicable. The court in that case referred to certain mining cases upon which the appellant herein also relies; but these, upon examination, are cases where the parties contracting to mine the ore agreed to pay royalties of so much per ton upon the ore actually extracted, the courts in such cases holding that the exhaustion of the deposit puts an end to the liability. These cases have no application to the facts of the case at bar.

The case of *Williams* v. *Miller*, 68 Cal. 291 [9 Pac. 166], which the appellant also relies upon, comes within the last-named class of cases and is thus of no aid to the appellant herein.

We do not pass upon the technical objections urged by the respondent against the consideration of the questions

presented upon this appeal, deeming it to be a case which should be considered and decided upon the merits.

The judgment is affirmed.

Lennon, J., Waste, J., Wilbur, J., Myers, J., *pro tem.,* and Lawlor, J., concurred. ·