[Sac. No. 4899. In Bank.—January 31, 1935.]

BANK OF TEHAMA COUNTY (a Corporation), Appellant, v. FEDERAL REALTY COMPANY (a Corporation) et al., Respondents.

A. M. McCoy and Wetter & Rankin for Appellant.

George R. Freeman for Respondents.

THOMPSON, J.—This action was instituted by the Bank of Tehama County to recover $1100 placed in escrow with the Bank of Willows for the purpose of securing the release of a band of sheep, held by the defendant, Federal Realty Company, under claim of an agistor's lien, and upon which the plaintiff bank holds a chattel mortgage. It is expressly stated in the letter from the plaintiff to the Bank of Willows, which contains the agreement of the parties and the escrow instructions, and which is attached to the complaint as "Exhibit B", that "the said deposit of $1,100 is to be held by your Bank as in lieu of the possession and claim of possession of said Federal Realty Company" until final determination of the controversy. The First National Bank of Willows, substituted as the escrow holder after the liquidation of the Bank of Willows, filed a waiver of its right to appear in the action and its consent to be bound, as to the impounded sum, by any judgment entered therein. The Federal Realty Company filed its answer and cross-complaint asking for the delivery to it of the escrowed money, and from a judgment in favor of the defendant the Bank of Tehama County has taken this appeal. The validity of the appellant's chattel mortgage upon the sheep in question is admitted by the respondent in its brief and, on page 5 of its opening brief, appellant makes the following concession: "We are willing to admit, and do hereby admit that if Defendant Federal Realty Company indeed had a valid Agistor's lien at and during the time these Sheep were pastured upon its lands, then such and said Lien did take precedence over the said Chattel Mortgage of Plaintiff."

The sheep in question belonged to A. N. Fraga. The pasturage was arranged by agreement between Fraga and the defendant, Moutrey, who was the agent for the defendant Federal Realty Company, the Central Savings Bank and the Central National Bank as to various tracts of land owned severally by these corporations in Butte and Glenn Counties. With regard to the pasturing of the sheep, the trial court found that, on or about November 1, 1931, Fraga and Moutrey entered into an agreement whereby Moutrey "agreed to pasture said sheep and other sheep owned by said A. N. Fraga on the lands in Butte and Glenn Counties belonging to said above named corporations at a price or pasturage charge of fifteen (.15) cents per head per month, said A. N. Fraga to provide the necessary herders and said agreement to continue in force as long as any feed remained on any of the lands of the said respective corporations; that on the 1st day of November, 1931, in accordance therewith, said A. N. Fraga delivered 1000 head of sheep into the possession of said defendant, A. E. Moutrey at the Chico Ranch in the County of Butte, and on the 10th day of November, delivered an additional 1000 head of sheep into the possession of said A. E. Moutrey for pasturage purposes; that said sheep were continuously in the possession of and pastured by A. E. Moutrey on the respective lands of said named corporations and for their respective benefit, and on the 13th day of December, 1931, said sheep were removed to the lands of the Federal Realty Company, in the County of Glenn, and delivered into the possession of said Federal Realty Company, a corporation, for pasturage purposes in accordance with said agreement; that said sheep remained continuously in the possession of said Federal Realty Company on its lands in the County of Glenn until the 14th day of May, 1932, when said sheep were delivered to said A. N. Fraga in pursuance to the agreement set out in Plaintiff's complaint and marked 'Exhibit B' (the agreement already referred to); that at all times from December 13, 1931, to May 14, 1932, said sheep were held by said Cross-complainant Federal Realty Company on its claim of lien for pasturage thereon." It was also found that the pasturage charge due and unpaid was the sum of $1165.

It is the contention of appellant that this finding as to the possession of Moutrey for the defendant Federal

Realty Company is not supported by the evidence and that, lacking the element of exclusive possession, direction and control, respondent cannot maintain its claim of lien under section 3051 of the Civil Code, which provides: ''persons pasturing horses or stock have a lien dependent on possession for their compensation in caring for, boarding, feeding or pasturing such horses or stock''. More specifically, appellant claims that there has not been shown any act of delivering possession by Fraga or any act of taking possession by Moutrey.

The testimony of Moutrey, Fraga and one Z. P. Dyer, outside man for the bank, shows, without substantial contradiction, that Fraga and Moutrey made this arrangement with respect to all the lands under Moutrey's supervision; that, when the sheep were first moved onto the lands near Chico, Moutrey asked Fraga whether he wanted to rent the land by the acre or pasture by the head and Fraga chose the latter; that when this feed gave out Fraga asked Moutrey whether he had any more; moved his sheep to other land in Glenn County on December 5th, and, on December 13th, moved onto the Federal Realty Company land in Glenn County; that the sheep were always herded and cared for by Fraga himself or herders employed by him; that this was in accordance with the pasturage agreement; that Moutrey always told Fraga where to pasture or to move the sheep, although he never counted them or cared for them himself or through his own employees. Fraga testified that he never moved the sheep without first getting Moutrey's permission, although on one occasion he had sold twenty-six lambs without informing him, but that he paid no pasturage charge for lambs; that payments were made for the pasturage he received as he left the lands, although he still owed some money on the first piece of defendant's land at the time he moved to the second, but that pasturage he paid as soon as he sold some wethers, taking his sheep to a public corral for the purpose, all with the consent of Moutrey. Fraga testified, with respect to the pasturage, the claim for which is now under examination, that he notified Moutrey he was going to move to summer pasture and they figured up the pasturage to the day he was going to leave and Fraga wrote him a check which was dishonored; that he, Fraga, got his camp and the sheep ready to move be-

cause he thought the bank was going to take care of the pasturage; that the bank kept urging him to start but he consulted Moutrey and Moutrey put a man out to guard the sheep to prevent the bank from taking possession. Moutrey does not deny that Fraga took his herd to a public corral with his permission while en route from one pasture to another for the purpose of cutting out some sheep to sell, nor that it is quite possible that he may have moved the sheep across a public highway while moving them from one pasture to another, nor does he deny that Fraga started to leave but was stopped before he had left the lands of the defendant.

Appellant quotes in its brief many definitions of ''agistment'' and ''agistor''. In *Williams* v. *Miller*, 68 Cal. 290, 293 [9 Pac. 166, 168], this court said: ''Webster defines the word 'agist' to mean 'to take to graze or pasture at a certain sum' and 'agistment' as 'the taking and feeding other men's cattle in the king's forest, or on one's own land, at a certain rate'.'' The provision that Fraga was to do his own herding does not prevent this from being a contract of agistment. (*Williams* v. *Miller, supra.*) That it was such a contract rather than a lease of land seems clear from the fact that Moutrey could have pastured other sheep there too, that he directed the route to be taken in moving the sheep and always indicated the places they should be pastured and that Fraga never moved the sheep or changed their pasture without getting Moutrey's consent. The trial judge was justified in concluding from the evidence that the possession and control was in the defendant, through its agent Moutrey, despite the fact that under the contract of agistment, the owner of the sheep was obligated to take upon himself their actual care, such as herding, watering and salting. Appellant places great reliance upon the case of *Howard* v. *Throckmorton,* 59 Cal. 79, where it was held that the contract was a lease rather than an agistment, although pasture was paid for by the head and the defendant undertook some duties with respect to the stock and maintenance of fences. The owners of herds, which were dairy cattle, rented small houses, corrals and portions of the lands, which they used as dairies. That the two cases are distinguishable on their facts appears from the following finding of the court in the Howard case: ''The defend-

338

ant keeps a superintendent or manager, whose duty it is to keep these herds separate, and sometimes rodeos are held to divide the stock. The cows, however, would naturally not wander much from where they are milked, and the main duty of herding would inevitably fall upon the owners who are using them; in fact, *they as exclusively occupy their respective portions of the land as though they owned them."* It should further be noted that the court was there considering, not the rights and obligations of the owner of the land as to the owner of the cattle, but was concerned solely with the question of whether the rents were received by the defendant as rents, issues and profits of the land or were "moneys made by him, as fruits of his own industry" for the purpose of determining the right of his cotenants to an accounting.

The judgment is affirmed.

Langdon, J., Curtis, J., Shenk, J., Seawell, J., Preston, J., and Waste, C. J., concurred.