[Civ. No. 13333.   Second Dist., Div. Two.   Feb. 25, 1942.]

GENEVIEVE McDORMAN, Appellant, v. JOSEPH M. MOODY, Respondent.

Elbert E. Hensley for Appellant.

R. Bruce Murchison, John Bricker Myers and Richard C. Hart for Respondent.

MOORE, P. J.—This action arose out of an alleged breach of contract whereby plaintiff's assignor, one Messimer, agreed to sell to respondent Moody 1500 shares of stock in the United Trading Stores, Inc., an Arizona corporation.

The contract was made May 20, 1939. By its terms Messimer agreed to sell and transfer to Moody all of his right, title and interest in and to the 1500 shares of stock of the corporation for the sum of $12,000, payable as follows: $150 June 20, 1939, and $150 on the 20th day of every month

thereafter until the full sum of $12,000 is paid. The instrument then proceeds: ". . . in the event the United Trading Stores, Incorporated, should file a voluntary petition in bankruptcy and be adjudicated a bankrupt, or should be declared an involuntary bankrupt, then in either of said cases the party of the second part, from and after the date of adjudication of the United Trading Stores, Incorporated, as a bankrupt, shall no longer be liable by reason of this agreement for any further payments for the purchase of said stock; and

". . . should the United Trading Stores, Incorporated, execute a deed of assignment for the benefit of creditors . . . all payments to be made under this agreement by the party of the second part to the party of the first part shall cease from the date of the execution and delivery of the deed of assignment for the benefit of creditors, and such payments shall be held in abeyance until such time as it shall be conclusively determined that the United Trading Stores, Incorporated, is again able to operate free from such assignment, at which time the party of the second part shall resume payments provided for herein and shall continue to make such payments until the full sum of $12,000 provided for herein is paid, and nothing contained herein shall be understood to require the party of the second part, upon the resumption of business of United Trading Stores, Incorporated, free from the said assignment, to pay to the party of the first part in a lump sum the payments falling due during the assignment period, but the assignment period shall lengthen the period of time necessary to complete the payment of the $12,000 provided for herein, and the party of the second part shall, upon the resumption of business as aforesaid, be obliged to pay only the monthly installments provided for herein during the length of time remaining and necessary to pay the balance of the consideration provided for herein; but if the said corporation should not be able to operate again free from the assignment and should it be liquidated, then . . . the party of the second part shall not be liable any longer under the terms and conditions of this agreement.

". . . in case of default by the party of the second part for any other reason than those mentioned in this agreement in making any of the payments above described, that . . . the full amount of the balance then due upon this agreement shall become immediately due and payable." There is

no indication that an application had ever been made for a permit to issue the stock of the corporation or that it ever had sufficient assets to justify the granting of such permit.

Respondent made seven monthly payments during 1939, aggregating $1,050. On January 20, he forwarded his check for the installment then due to the assignor but six days later, on discovering that a petition to have the corporation adjudicated a bankrupt was about to be filed, he stopped payment on his check and advised the assignor that "proceedings were in progress for a petition in bankruptcy" against the corporation and that he would make no further payment on the contract. Neither did Messimer make demand upon respondent for the payment of the balance of the purchase price after the latter's refusal to make further payments nor did he make tender of the stock prior to or during the trial.

After hearing respondent's declaration not to make further payments Messimer assigned his interest in the contract to appellant who alleged in her complaint that she had "exercised the option to declare the remaining unpaid balance under the terms of said contract due and payable." Also, she alleged that she and her assignor "have duly performed all conditions of said contract on their part to be performed and are ready, willing and able to deliver the articles described in said contract." She demanded the balance of $10,930 and $2.50 protest fees. Her complaint was filed February 8, 1940. At the trial the only evidence received was the contract, the assignment, the check, the notice of protest, the adjudication of bankruptcy dated February 26, 1940, and the testimony of the parties.

The findings of the court which are pertinent to our discussion include the following: That the corporation was adjudicated a bankrupt on February 26, 1940; that prior to that date the 1500 shares had never been issued and could not then be issued to respondent; that the corporation did not have assets sufficient to warrant the issuance of the shares; that plaintiff's option did not exist to declare the unpaid balance due; that the assignor and plaintiff have not duly performed all conditions of the contract; that they are not ready, able and willing to deliver the stock.

With the foregoing the court made other findings which are not justified by the documentary proof and which led it to adopt an untenable theory; at the same time the judgment is just and must be affirmed.

Appellant pleaded that she and her assignor had "duly performed all conditions of said contract on their part to be performed and are ready, willing and able to deliver the articles described in said contract." The denial of these allegations created a material issue of fact upon which the court found that no part of the 1500 shares had been delivered and that plaintiff and her assignor "are now unable or *ready* to deliver all or any part thereof to the defendant." Under the contract, the assignor was obliged to deliver the 1500 shares. The findings and the evidence are emphatic and clear that they were not delivered within the seven months during which respondent regularly made his monthly payments. When the denouement occurred and the insolvency of the corporation was revealed, the assignor was utterly unable to make delivery. He could not, and the plaintiff did not, establish her right to have the shares issued. The assets of the company were not even sufficient to justify the issuance of a permit for any stock. Upon the entry of the order of adjudication in bankruptcy it was thereafter vain to expect the issuance of any shares. Competent proof establishes that appellant was not able or ready to deliver and will never be able to deliver any part of the shares sold under the contract. The findings against appellant upon this material issue foreclosed her right to prevail.

The complaint alleges: "that said plaintiff has exercised the option to declare the remaining unpaid balance . . . due and payable; that demand has been made upon defendant . . . of the unpaid balance and that defendant has refused to pay such balance." These allegations also declare certain facts which are denied by the answer. Not a word of evidence was introduced to establish either an acceleration of the unpaid balance or that demand for payment thereof was made prior to the filing of the action. These are facts the evidence of which was necessary to prove appellant's case.

Neither did appellant tender the stock. Such offer was a necessary condition precedent before she could enforce payment of the unpaid balance. (17 C. J. S., sec. 480, p. 985.)

Before appellant could require respondent to pay she was obliged to fulfill the conditions imposed upon the vendor. (Civ. Code, sec. 1439; 6 Cal. Jur. 399.) If she had been authorized to accelerate the payment of the unpaid balance, her declaration to that effect would have made performance

on her part concurrent with performance on the part of respondent. It was incumbent on her not only to tender the stock in a solvent corporation but also to make good that offer by making an appropriate deposit of the shares.

It is a general rule that one who cannot perform his part of a contract is not entitled to performance on the part of his contractee. (17 C. J. S. 934.) Notwithstanding that if a vendee under a sales agreement notifies the vendor before the latter is in default that the vendee will not perform his obligation and does not retract such notice before the time fixed for his performance, the vendor is entitled to enforce the obligation without previously performing or offering to perform his part of the contract (Civ. Code, sec. 1440), yet upon the trial there must be proof of the vendor's ability to perform all of his covenants. (*Dickey* v. *Kuhn,* 106 Cal. App. 300, 303 [289 Pac. 242].) Even if the vendor had offered to deliver the stock sold under the agreement such offer would have been of no effect in view of the inability of the vendor to perform according to his offer. (Civ. Code, sec. 1495.)

The principle is universally recognized that a contract for the purchase of property cannot be enforced by the vendor when the consideration for the purchase price wholly fails in a material respect. (Civ. Code, sec. 1689; *Walker* v. *Harbor Business Blocks Co.,* 181 Cal. 773, 782 [186 Pac. 356].) Where the promise of the vendor to deliver corporate stock has failed without fault on the part of his vendee, the consideration for the promise of the vendee thereupon fails in a material respect. (3 Williston on Contracts, sec. 814.) An agreement to sell implies the ability to deliver the thing sold. When the vendor becomes unable to execute his part of the contract, his right to enforce the payment of the purchase price thereupon fails. (*Williams* v. *Miller,* 68 Cal. 290 [9 Pac. 166]; *Ogren* v. *Inner Harbor Land Co.,* 83 Cal. App. 197 [256 Pac. 607].) It was held in the Ogren case, *supra,* that where buildings upon property, sold under contract and remaining in the possession of the vendor, were destroyed by fire the petitioner could not compel the vendee to complete the purchase but that the latter might rescind and secure the return of what he had paid on the contract. Under an agreement to agist and pasture the cattle of B for a year, A cannot compel payment of the amount charged for the pasturage where it is shown that there was no grass

on A's land upon which B's herds might feed. (*Williams* v. *Miller, supra.*) A covenant for title applies to the time of conveying rather than to the date of the contract for sale. (*Kares* v. *Covell,* 180 Mass. 206 [62 N. E. 244, 91 Am. St. Rep. 271].)

No promise in a bilateral contract is wholly independent of the counter-promise. Although performances under the contract are not necessarily to be rendered at the same time, yet the price of a chattel, which is the subject of the contract, is the agreed exchange for the chattel whether the price be payable before or after delivery. (Restatement of Contracts, sec. 266.) Although the payment of the purchase price of an article may be due as under the contract, at the same time if the article sold will not be "substantially forthcoming" the payment of the purchase price is excused. (3 Williston on Contracts, sec. 828. See *Gentry* v. *Recreation,* 192 S. C. 429 [7 S. E. (2d) 63, 128 A. L. R. 743]; *Hoefer* v. *Fortmann,* 219 Iowa 746 [259 N. W. 494]; *Street* v. *Commercial Credit* Co., 35 Ariz. 479 [281 Pac. 46, 67 A. L. R. 1549].)

The foregoing authorities indicate clearly the legal concept and ethical standard which should determine the rights of parties where a vendor cannot make delivery of the thing which he has sold on contract. Because of the inability of plaintiff's assignor to deliver what he sold, the vendee was released from making further payments after discovery of such failure.

Appellant contends that under the agreement the default of respondent in making the January payment caused the total balance to be immediately due and payable and that she put respondent in default and filed suit before the bankruptcy of the corporation was adjudicated. She cites authority (*Harris* v. *Kessler,* 124 Cal. App. 299, 301 [12 Pac. (2d) 467]) justifying her election to treat the sale as absolute and to sue for the balance due, ignoring the fact that she owed a concurrent obligation which she was unable to perform.

The contention that respondent could have caused the issuance of the stock and thereby have been possessed of the consideration for his money is a meaningless gratuity. To hold the evidence of a right to corporate stock adds no value to it. There could have been no virtue in the certificate unless the stock had substantial value.

The judgment is affirmed.

Wood (W. J.), J., and McComb, J., concurred.